## TIBBETTS v. MOORE et al.

A MECHANIC's lien which describes the property as a "quartz mill, being at or near the town of Scottsville, in Amador County, known as 'Moore's New Quartz Mill,'" contains a sufficient description to hold the property, where there is no evidence that there was any other quartz mill at the place so designated as to render it uncertain which was intended.

Where the lien describes the land around the building, on which a lien is claimed, in these words, "with such convenient space of land around the same as may be required for the convenient use and occupation thereof," the description is also sufficient; but it is proper for the Court by its decree to define the amount and extent of the land connected with the building which is properly subject to the lien ; and if the decree follows the description in the lien, it is doubtful whether the purchaser will acquire any land beyond that covered by the building.

The lien of a material man accrues at the time he has the materials, which he has contracted to furnish, ready for delivery at the place where he has agreed to deliver them.

When a mechanic or material man commences proceedings to foreclose a lien, and publishes notice in accordance with the statute, for all persons holding and claiming liens to appear in Court and exhibit the same with their proofs, the exhibit of proofs of liens by lienholders, coming in under the notice, is not governed by the sections of the Practice Act relating to interventions, and the papers filed by them are not governed by the strict rules relating to pleadings in ordinary actions.

Where the notice of lien states that the materials were furnished to A & Co., when in fact they were furnished to A, this does not invalidate the lien, for the material fact is, whether the materials were furnished for and used in the construction of the building on which the lien is claimed.

Tibbetts *v.* Moore.

A, the owner of a quartz mill in Amador County, executed a mortgage on the same to B.   Afterwards, A purchased at Sacramento a steam engine and boiler, and, to secure the purchase money, executed to C a chattel mortgage on the same, and then transported them to Amador and placed them in the quartz mill, so that they became a part of the realty : *held*, that C's mortgage on the steam engine and boiler had priority over the mortgage of B.

APPEAL from the Sixteenth Judicial District, Amador County.

Moore, the mortgagor, purchased the steam engine spoken of in the opinion, of Lambard, its manufacturer, in Sacramento City.

The other facts are stated in the opinion of the Court.

*John W. Armstrong,* for Appellants.

The notice of lien did not correctly describe the property to be charged with the lien.

The law requires that the premises on which the building is situated should be described correctly (Wood's Dig. 1059, Sec. 2), with certainty and particularity.   (Nott's N. Y. Lien Law, 137.)

It is true that the premises are described in the notice as Moore's New Quartz Mill, at or near Scottsville, but this is not sufficient notice of a mechanic's lien (*Montrose* v. *Conner,* 8 Cal. 346) ; yet even if it were sufficient, there is no evidence in the record, nor was there any given at the trial, that the property in controversy was so known at the time the lien was filed, or at any other time.

Premises in a deed must be described by a well known name, and if it is at all sufficient to describe it by name in a notice of lien, it must be done with as much particularity as in a deed—by a well known name.   But I think that a description of the property by name is entirely insufficient, because the statute does not give a lien upon the building, and the whole tract of land on which the same is situated, but only on so much of the land as may be necessary for the convenient use and occcupation of the building (Wood's Dig. 1060, Sec. 4) ; otherwise third parties dealing with the property cannot know how much of the ground is affected by the lien ; they could not know how much ground would be deemed necessary to the convenient use and occupation of the mill.   It was evidently the intention of the Legislature to require lien claimants to desig-

nate by some means the quantity of land charged with the lien; for a condition precedent to the attaching of the lien is, that a notice of lien containing a correct description of the property to be charged with the lien, should be filed in the Recorder's office of the county where the same is located; and the statute states what quantity of land (and therefore what particular land) shall be charged with the lien.    (Wood's Dig. 1060, Sec. 4.)

On the facts as disclosed by the record, was defendant, O. D. Lambard, entitled to a decree that the boiler, engine, etc., should be segregated from the mill and sold separately to satisfy his mortgage, and thus destroy the security of the appellants?

I think not; the record of appellants' mortgage gave notice to all the world from the twenty-second day of October, 1860, that the assignor of the appellants had a lien by mortgage on the mill, land, and machinery in, and to be put into the mill; and therefore, Lambard took his mortgage with notice of the mortgage of appellants and subject thereto.    (Wood's Dig. 103, Sec. 25.)

Did not defendant Lambard, lose his lien when he allowed the engine, boiler, etc., to be put into the mill, and become a necessary part of it? I think, as against appellants, he did.

They became fixtures when they were attached to the mill with the consent of Lambard; and if he ever had a lien upon them, he lost it.

It would destroy the whole property to segregate the boiler, engine, etc., and this the law will not allow.

The case of *Sands* v. *Pfeiffer* (10 Cal. 263), establishes the doctrine that a boiler, engine, etc., though not in the mill at the time of the execution of the mortgage, but put in soon after, are fixtures and pass to the mortgagee.

The case of *Merritt* v. *Judd* (14 Cal. 60), shows that such machinery in a quartz mill are fixtures.

In *Winslow* v. *Merchants' Insurance Co.*, (4 Met. 306), it is held, that as between the mortgagor and mortgagee, fixtures for trade cannot be removed by mortgagor though put up by mortgagor after the execution of the mortgage.

On examination of the case of *Winslow* v. *Merchants' Insurance Co.* (4 Met. 306, 316), it will be seen that the controversy was

between a prior mortgagee who had a mortgage on the land and building, and a subsequent mortgagee who had a mortgage on the boiler, engine, etc., which were put into the building after the execution of the first mortgage, as in this case, and there the lien on the boiler, engine, etc., was adjudged in favor of the first mortgage. This case was followed in the case of *Butler* v. *Pope* (7 Met. 40), and in the case of *Colins* v. *McLagin* (29 Maine, 115.)

*R. M. & N. C. Briggs*, for Respondents Morgan and Weatherwax.

*John H. Fry* for Respondent Tibbetts.

*John G. Hyer* and *John H Fry*, for Respondent Lambard.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to enforce a mechanic's lien, notice of which was filed in the Recorder's office, November 24th, 1860, on a quartz mill owned by the defendant Moore, in Amador County, for machinery used in the construction of the mill. Morgan and Weatherwax came in under the published notice, and filed liens on the same property for lumber furnished and labor performed on the mill. Brown and Andrews were made parties, they claiming a lien thereon under a chattel mortgage, executed by Moore to one Mosick, and by Mosick assigned to them. This mortgage bears date October 22d, 1860, was recorded the same day, and includes the quartz lode and the quartz mill then in process of erection, with the boiler, engine, and other machinery used in the mill. Lambard is also made a defendant, he claiming a lien under a chattel mortgage on the boiler, engine, and fixtures connected therewith, executed by Moore on the sixteenth day of November, 1860. The property described in this mortgage was then in Sacramento, where the mortgage was executed, but was afterwards removed to and put up as a part of the fixtures and machinery of the quartz mill. This mortgage was duly recorded in Sacramento County, November 17th, and in Amador County, November 19th. The case was tried by the Court, and a decree rendered that the claim of Lambard

was a valid, subsisting lien upon the property described in his mortgage for the sum of eight hundred and twenty-two dollars and five cents; that the mortgage of Brown & Andrews was a valid lien against the property described therein for three thousand nine hundred and thirty-eight dollars and sixty-six cents, and that they have a further lien for two hundred and eighty-seven dollars and eighty-six cents for money paid by them for taxes and other expenses about the property. It was further decreed that the property mentioned in the Lambard mortgage be sold, and out of the proceeds the Sheriff to pay—first, the cost and expenses of the sale; second, the costs and expenses of the action, and the two hundred and eighty-seven dollars and eighty-six cents advanced by Brown & Andrews, if sufficient to pay them and the debt due Lambard; third, to pay the amount due said Lambard; fourth, the overplus, if any, to be added to the proceeds of the sale of the property described in the mechanics' liens. It also decreed that the property described in the mechanics' liens should then be sold, subject to the rights of the purchaser under the Lambard mortgage, and from the proceeds, with any overplus from the first sale, after deducting costs and expenses of sale, to pay to the holders of the mechanics' liens the respective amounts due them under the decree, and if sufficient, to be divided *pro rata* among them; but if there should be a surplus, the same to be added to the proceeds of the sale of the property described in the Brown & Andrews mortgage. It also decreed, that the property described in the Brown & Andrews mortgage should then be sold, subject to the rights of the purchasers at the two prior sales; and out of the proceeds to pay the amount due on that mortgage, and the overplus, if any, to the defendant Moore; and in case of a deficiency in the payment of said several debts, judgment to be entered for such deficiency against him, and that executions issue thereon. From this decree Brown & Andrews alone appeal.

The first point urged is, that the notice of lien filed by the plaintiff Tibbetts, does not correctly or sufficiently describe the property sought to be charged with the lien. It is described as a "Quartz mill, being at or near the Town of Scottsville in Amador County, known as Moore's New Quartz Mill." There was no evidence that

Tibbetts v. Moore.

there was any other quartz mill at that place so designated as to render it uncertain which was intended.    The description we deem sufficient to identify the property and uphold the lien.    (*Hotaling v. Cronise*, 2 Cal. 63.)

The land around the mill is described in the complaint and notice of lien as follows: " With such convenient space of land around the same as may be required for the convenient use and occupation thereof."    It is objected that this description is also insufficient.    Sec. 4 of the Mechanics' Lien Law (Wood's Digest, 538) provides that " the land upon which any building or super-structure shall be erected, together with convenient space around the same, or so much as may be required for the convenient use and occupation of the premises, shall also be subject to the lien," etc.    The notice and the complaint in this case follow the terms of the statute, and are sufficient as a matter of description.    In cases of this kind it is proper for the Court, by its decree, to define the amount and extent of the land connected with the mill which is properly subject to the lien.    The decree in this case, however, does not do so; and this is also urged as an objection.    Such an omission will not invalidate the decree; but it renders it doubtful whether a purchaser under it will acquire any land beyond that covered by the buildings.    That question, however, is not properly before us; and it is not necessary to determine it.    No objection of this kind seems to have been raised in the Court below by demurrer or otherwise; nor does it appear that the appellants requested the Court to define in its decree the extent of space around the mill to be subjected to the lien.    Under such circumstances, they will be deemed to have waived such objections.

The next point is, that none of the materials furnished by the plaintiffs had been delivered at the mill at the time the mortgage held by the appellants was executed and recorded, and it is contended, therefore, that the plaintiff's lien did not attach to the property until after the mortgage.    The statute then in force provided that " the liens created by this act shall be preferred to every other lien or encumbrance which shall have attached upon the said property subsequent to the time at which the work was commenced, or the first of the materials were furnished; and also to all mortgages

and other encumbrances unrecorded at the time such work was commenced, or the first of such materials were furnished." The Court found, among other things, " that the plaintiff, on the twenty-fifth day of September, 1860, commenced to furnish, for the construction of the quartz mill described in the plaintiff's complaint, certain necessary castings," etc. The mortgage held by Brown & Andrews was dated October 22d. The question is, whether or not the word " furnished," as used in the statute, means " delivered at the building " in the construction of which the materials are furnished. We think that such is not its reasonable construction. The material man is properly said to have "furnished" the materials, when he has delivered, or has them ready for delivery, at the place where he has agreed to deliver them under the contract; which, in this case was at the plaintiff's foundry, some distance from the quartz mill. This point, therefore, is not tenable.

The next questions to consider are those relating to the lien of Morgan, one of the parties to the action. It is insisted that the petition filed by him, asserting his claim and lien, does not state facts sufficient to constitute a cause of action, and therefore the Court erred in admitting any evidence in support of the claim over the objection of the appellants. The proceedings in actions to enforce mechanics' liens are special, and peculiar in their character. Under the seventh section of the act in force at the time this action was commenced (Wood's Dig. 538, 539), it was not necessary for the lienholder who commenced the action to make other holders of liens under the statute, parties by name, but they were brought in by a published notice, "notifying all persons holding or claiming liens on said premises, to be and appear in said Court, on a day to be therein specified, and to exhibit then and there the proof of said liens." " On the day appointed, the Court shall proceed to hear and determine ·the said claims, in a summary way, or may refer the same," etc. It will be seen that the proceedings are summary in their character, and differ entirely from ordinary actions. The exhibit of proof of liens by lienholders coming in under the notice, is not governed by the sections of the Practice Act relating to interventions ; and the papers filed by them, exhibiting their claims, are not governed by the strict rules relating to

pleadings in ordinary actions. In this case, the lienholder, Morgan, presented his claim in the form of a petition duly filed in the action, in which his demand and lien were set forth. It is objected that it does not state that the lumber was furnished to be used in the construction of the mill, or that it was used in that manner. This objection, if a valid one under the statute referred to, should have been taken by demurrer, and not by objection to the evidence which showed that it was thus furnished and used.

The notice of lien filed by Morgan sets forth that the lumber was furnished to "Moore & Co.," and it is objected that the lien cannot be enforced against property owned by Moore, and not Moore & Co. The material facts to sustain the lien are, that the materials were furnished for, and were actually used in the construction of the building on which the lien is claimed. Whether the owner purchased the materials in his own name or in the name of a firm of which he was a member, can make no difference so far as relates to the lien, which is the only matter the appellants have a right to contest.

The notice filed by Morgan includes claims for lumber furnished for the construction of the quartz mill, and also a blacksmith shop, and a building erected over the shaft of the mine. It is contended that by filing his notice in this form, he loses all lien on either. Whether, in a case like this, where all the buildings, though separated from each other, form one establishment, and are all used, and are necessary in conducting the one business carried on, the lien of the mechanic or material man can be held to include all the buildings in one claim and lien, it is unnecessary to determine. The Court, in this case, in its findings separated the amount due for the materials furnished for the construction of the quartz mill proper from that for the other buildings, and rendered its decree accordingly. In this, no error was committed to the injury of the appellants.

The next class of objections to be noticed are those which relate to the Lambard mortgage. The mortgage held by the appellants is dated October 22d, 1860, and was recorded in Amador County the same day. It was executed under the Chattel Mortgage Act (Wood's Dig. 108), and the property mortgaged is described as follows : "All that certain piece or parcel of land or lot of ground,

and the improvements thereon, known as Sidores Quartz Lode or Ledge, situate in Amador County and State of California, about one mile south from the town of Jackson, near the head of Hunt's Gulch, commencing about one hundred and fifty feet south of Howard's Garden, running thence south-east one thousand feet, said range running in a south-east and north-west direction, and being of sufficient width to cover said lode, with all the surface widths, dips, angles, and branches, and all things pertaining to the same, and being the same lode now worked by Albert Moore; also the quartz mill, being at this time in the course of erection upon or near the said lode, together with the boiler, engine, stamps, and machinery of all kinds and descriptions in or about said mill now, and when the same shall have been completed, and all fixtures, furniture, and implements used in or about said mill or quartz lode, and also all quartz rock taken from said quartz lode that may be at or near said mill and lode at the time of foreclosure of this mortgage," etc.

The Lambard mortgage is dated November 16th, 1860, and was duly recorded in Sacramento County, where the property then was, November 17th, and in Amador County on the nineteenth of November.    It was executed in pursuance of the provisions of the same Chattel Mortgage Act, and the property mortgaged is described as follows: "One steam engine of the following description: twelve-inch cylinder, twenty-four inch stroke; one heater, one force-pump, one wheel and pinion, and one steam-gauge. Also, one steam boiler of the following description: twenty feet long, and forty inches in diameter, having five nine-inch flues." Soon after this mortgage was given, the property described therein was removed from Sacramento to the quartz mill, and put up therein, for the purpose of running the machinery thereof. The appellants claim that when this property was put up in the quartz mill it became a fixture and part of the realty; that it became thereby a portion of the property covered by their mortgage; that their mortgage, being prior in time to that of Lambard, it became a lien thereon prior to that claimed by Lambard; therefore the proceeds of the sale thereof should be applied first to the satisfaction of their debt, and that the Court below erred in giving priority to the lien of Lambard.

Tibbetts *v.* Moore.

It is not pretended that the appellants' mortgage was any lien upon this boiler and engine at any time before the same was attached to the realty. At the time the Lambard mortgage was executed, there was no lien or incumbrance upon this property. Their mortgage was duly executed and recorded, in compliance with the statute, and at its date it was the prior and in fact only lien thereon. After the execution of the Lambard mortgage, the mortgagor took possession of the property, removed it, and set it up in the quartz mill. Did this act of the mortgagor, even though done with the knowledge and consent of the mortgagee, divest the latter of a valid lien, fully vested, and subject it to a prior lien on the mill? Treating the property described in the appellants' mortgage as real estate, there is no doubt that, when the boiler and engine were attached to the realty, they became subject to his mortgage. (*Ferguson* v. *Miller*, 6 Cal. 402; *Sands* v. *Pfeiffer*, 10 Id. 258; *Union Water Company* v. *Murphy's Flat Company*, 22 Id. 620.)

But it is equally clear that their mortgage was no lien thereon before the property was so attached. We are not aware of any rule of law or equity which will divest the defendant Lambard of the priority of lien lawfully acquired by him upon the property described in his mortgage, by any such means as are shown in this case. The cases referred to by the appellant merely sustain the principles above referred to as already decided by this Court, but they have no application to the present case. The cases of *Winslow* v. *The Merchants' Insurance Company* (4 Metcalf, 306), and *The Union Water Company* v. *Murphy's Flat Company* (22 Cal. 620), were very similar in principle. In both cases, fixtures and improvements had been put on the real estate *after* the first mortgage, but *before* the second had been executed. In both cases the real estate itself was the subject of the mortgages, and it was held in both cases that the fixtures became subject to the first mortgage as soon as they were attached to the realty, and therefore the first mortgage was a prior lien. But those cases differ from the present in this: that here there was a valid subsisting mortgage upon the engine and boiler *before* the appellants' mortgage became a lien thereon; and although the Lambard mortgage bears a later

15

date than the other, yet it was a lien upon this property *before* that had attached. We think it more consistent with the rules of equity to hold that the lien of appellants' mortgage upon the engine and boiler dates only from the time they became attached to the realty; and that time being subsequent to the date of the Lambard mortgage, it is subject to the lien of the latter. Ordinarily, the lien in such case would be construed to relate back to the date of the mortgage; but this doctrine of relation will not be so applied as to defeat or divest intermediate rights and liens lawfully acquired. In a case like the present, it should not be construed to relate back beyond the time the property was affixed to the realty, as against the Lambard mortgage.

Both mortgages are executed and recorded as chattel mortgages, under the statute; and treating them in that character, there can be no doubt that the Lambard mortgage has priority over the other so far as relates to the property included in it. The provision in Sec. 2 of that act, respecting the recording of the mortgage in the county where the mortgagor resides, and the property is located, and the proviso respecting the removal of the property to "a location for use," and the time allowed for recording by Sec. 7, clearly contemplate that property of the kind described in the act is to still remain subject to the mortgage lien, though its location be changed, and it be put to use in connection with other property. Much of the property covered by the act, such as saw mill and grist mill machinery, steam boilers, steam engines, machinery, and buildings connected with quartz claims, etc., are of such a character that they are of little or no practical use until they are secured by attachment to real estate in the nature of fixtures, and the evident object and intent of the statute, to protect the mortgagee of such property, would be entirely defeated by holding that a mortgage lien thereon, before becoming fixtures, would be defeated and divested, or subordinated to another mortgage upon becoming a fixture. The separation and removal of the boiler and engine from the realty will leave the latter in no worse condition than it was before they were put up; so that affords no just ground for a different rule. There is no ground for saying that there has been a confusion of goods by attaching the property to the realty.

There is no difficulty in distinguishing and separating the several articles named in the Lambard mortgage.

The judgment is affirmed.