SABIN (CHASE v.). See Case No. 2,627.

---

## Case No. 12,196.
### SABIN v. CONNOR.
[Nowhere reported; opinion not now accessible.]

---

## Case No. 12,197.
### SABIN v. CONNOR.[1]
District Court, D. Nevada. March 30, 1871.

MECHANIC'S LIEN—NEVADA ACT—CONSTRUCTION—REPEAL—BANKRUPTCY—RIGHTS OF ASSIGNEE.

[1. It is the performance of the labor, and not the filing of the account and description, which gives the miner a lien under Act Nev. 1867 (St. 1867, p. 48), which provides that "all miners or other persons performing labor * * * shall have a lien upon said lode," and that the provisions of the mechanic's lien law of 1861 (St. 1861, p. 35), "respecting the mode of recording, securing and enforcing mechanics' liens, shall apply" thereto.]

[Cited in Re Hope Min. Co.. Case No. 6,681.]

[2. A mechanic's lien exists from the time the labor is begun, under the Nevada mechanic's lien law of 1861, making the lien thereby given preferred from the time the work is commenced. and providing that every person wishing to avail himself of the benefits of the act shall within 60 days after the completion of the building, etc., file his account, etc.]

[3. An assignee in bankruptcy takes the realty of the bankrupt charged with a mechanic's lien theretofore arising for labor performed, and the same may thereafter be enforced by the filing of the account, etc., as provided by law.]

[4. An act (Nevada Mechanic's Lien Law 1871; Laws 1871, p. 123) re-enacting in substance prior laws (Acts 1861–67) with some modifications. and repealing those laws in direct terms. where it is plain that it was never intended to destroy rights acquired under the old laws, but simply to consolidate and extend them, will be considered as continuing such laws.]

[5. A law in existence at the time labor was performed, giving a right to a lien therefor, and an action to enforce the same, is a part of the contract; and the repeal of the law cannot affect the right to the lien or an action for its enforcement.]

[Cited in Re Hope Min. Co., Case No. 6,681.]

[This was a bill in equity by A. B. Sabin, assignee in bankruptcy of the Hope Mining Company, against Charles Connor.]

HILLYER, District Judge. The bill is filed to have the lien of the defendant, a miner, declared null and void. Defendant demurs to the bill for want of equity. The facts are, briefly, that the defendant worked in the mine of the bankrupt, the Hope Mining Company, from about March 31, 1870, to February 10, 1871. Creditors' petition against the bankrupt was filed February 11, 1871; adjudication, March 2d, and assignment, March 3d. The defendant filed his notice of lien, account, and description of the property sought to be charged with the lien, on the 1st day of March. On the 4th day of March, the legislature passed a mechanic's lien law, and repealed, without any saving of rights acquired before that time, all former laws. The questions raised upon the demurrer are: First. That filing the notice, account, and description are necessary to create the lien, and, this having been done after the commencement of the bankruptcy proceeding, the lien cannot avail. Second. That the act of March 4th, by repealing the law under which this lien (if any) accrued, without any saving clause, has destroyed all remedy for the enforcement thereof.

On the first point the argument for the plaintiff is that the lien is created by filing the account and description required, and not by performing the labor: that the laborer has no lien until the account is filed. and not having done this prior to the commencement of proceedings in bankruptcy, to which the title of the assignee relates, no lien can be charged on the bankrupt's estate after such commencement of proceedings. Section 1 of the act supplementary to the mechanic's lien law of 1861 (St. 1867, p. 48) provides: "All miners or other persons performing labor to the amount of twenty dollars or upwards, * * *

---

[1] [Not previously reported.]

for the owner * * * of any lode of gold or silver bearing quartz, * * * he or they shall have a lien upon said lode," etc. Section 2 provides that "all the provisions of the mechanic's lien law of 1861, respecting the mode of recording, securing and enforcing mechanics' liens, shall apply hereto." It seems plain from this language that it is the performance of the labor that gives or raises the lien in favor of the laborer, and for the mode of recording, securing and enforcing this lien already in existence, the provisions of another law are adopted.

Referring now to the lien law of 1861 (St. 1861, p. 35), section 2 declares that every person wishing to avail himself of the benefits of the act (that is, of the lien) shall within sixty days after the completion of the building, etc., file his account and a description of the property to be charged with such lien. Section 4 makes the lien a preferred one over every lien or incumbrance which shall have attached to the property subsequent to the time at which the work was commenced. Section 6 provides that no such lien shall bind the property longer than six months after filing the same; and section 7, that such liens may be enforced by suit in any court of competent jurisdiction. Now, it seems clear to my mind that the lien exists from the time the labor is begun, and that filing the account and description and bringing suit within the time prescribed are only the mode by which the laborer may avail himself of such lien.

Judge Blatchford, in Re Dey [Case No. 3,-870], under the law of New Jersey, held that performing the labor did not create the lien. A careful reading of that law as quoted by the learned judge will show that there is a material difference between the language of that law and our own. The first section of the New Jersey law declares the debt shall be a lien, but the 12th section provides that no debt shall be a lien unless a claim is filed as provided in the act. The statute of New Jersey is not at hand, and it may well be that Judge Blatchford found enough, taking the whole law together to carry him to the conclusion that the legislature of the state did not intend a lien should exist until the claim was filed. On the other hand, the supreme court of Massachusetts, under the law of that state (not varying substantially from our own) as to creating the lien, held that the statute created the lien as soon as the labor is performed, and that the certificate necessary to keep the lien alive might be filed after the bankruptcy proceedings have been commenced. Clifton v. Foster [103 Mass. 233]. The Massachusetts law declared that, unless the certificate was filed within thirty days, the lien should be "dissolved." Our law says the party shall file the account, etc., in sixty days, if he wishes to avail himself of the lien. Both statutes create a lien when the labor is performed, but in one case it is dissolved, and in the other unavailable, unless the certificate is filed within the time prescribed. In Cali-

fornia, under a law from which our own is copied, it has been held that the lien attached from the time of the delivery of the material (Tibbetts v. Moore, 23 Cal. 208), and that the lien is deemed to have accrued at the commencement of the work (McCrea v. Craig, Id. 522). The defendant, then, had a lien on the property described when the bankruptcy proceedings were commenced, and the assignee took the estate charged with this equity. The filing of the account and description was necessary to preserve his lien, and this cannot be considered as any unlawful interference with the rights of the assignee, or the authority of this court. Clifton v. Foster, supra.

Upon the second point: The act of March 4, 1871, re-enacts in substance the laws of 1861 and 1867, with some modifications, and it also repeals those laws in direct terms. It is plain that the legislature never intended to destroy rights acquired under the old laws, but simply to consolidate all the laws upon the subject of mechanics' liens, and to extend it to some objects not before included. Unless, therefore, the repealment have an effect contrary to this intention, by reason of the unqualified terms of the repealing statute, it will be entirely consonant with justice to carry out the evident intention. In a case in point the supreme court of the United States said: "The new act took effect upon the repeal of the old, and may more properly be said to be substituted in the place of and to continue in force, with modifications, the provisions of the original act, rather than to have abrogated and annulled them." Steamship Co. v. Joliffe, 2 Wall. [69 U. S.] 450. The legislature of Massachusetts in adopting the Revised Statutes, repealed all former laws; and, speaking of the effect of this repeal, the supreme court of that state said: "There was no moment in which the repealing act stood in force without being replaced by the corresponding provisions of the Revised Statutes, and the practical effect is a continuance, and not an abrogation, of the old law." Wright v. Oakley, 5 Metc. [Mass.] 400. The law of 1871, which went into effect the instant the law of 1861 was repealed, provides that suits upon the liens may be brought in any court of competent jurisdiction. This, upon the authorities cited, may fairly be considered as a continuance of the law of 1861, which contained precisely the same language. The lien holder has a remedy preserved to him still by the new law, and the case stands very differently than it would if the law of 1861 had been repealed without the enactment of a substitute therefor.

But, if the repeal could have the effect contended for by the plaintiff, it would, in my judgment, "impair the obligation" of the defendant's contract. The law in existence at the time the defendant performed his labor was a part of his contract. After the labor was done, he had, by virtue of that law, a lien for the amount due him, and before the repeal everything required of him had been

done, and nothing remained except an action to enforce the lien. "When a right has arisen upon a contract or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it or an action for its enforcement." [Steamship Co. v. Joliffe], 2 Wall. [69 U. S.] 450. "The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and forming a part of them, as the measure of the obligation to perform them by the one party and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning. When it becomes consummated, the law defines the right, compels one party to perform the thing contracted for, and gives the other the right to enforce the performance by the remedies then in force." McCracken v. Hayward, 2 How. [43 U. S.] 608. "Whatever belongs merely to the remedy may be altered, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself." Bronson v. Kenzie, 1 How. [42 U. S.] 311. "Whenever the legislature so far alter the remedy as to impede, destroy, change, or render the right scarcely worth pursuing, they necessarily impair the obligation of the contract." Smith v. Morse, 2 Cal. 524. "If the legislature can deprive a creditor of the right to reach property, —a right which existed at the time of the contract,—it is evident that nothing will remain of the obligation of the contract but an empty name." Quackenbush v. Danks, 1 Denio, 128. Nothing would be left to this defendant but an empty name if the legislature can take away by repeal the only remedy, it is claimed, he has to enforce his lien.

I consider that the defendant has a valid lien upon the property described, and that it can be enforced in this court. The demurrer is sustained, and the bill dismissed, with costs.