[Civ. No. 917. Third Appellate District.—April 4, 1912.]

# M. B. ELLIOTT, Appellant, v. ELBERT HUDSON, Receiver of LAKEPORT MILL AND LUMBER COMPANY, a Corporation, and D. A. RICE, Respondents.

CHATTEL MORTGAGE OF PLANING-MILL MACHINERY—SUBSEQUENT FIX-
TURES TO REALTY—PRECEDENCE OF REAL ESTATE MORTGAGES—WANT
OF ACTUAL NOTICE OF CHATTEL MORTGAGE.—A mortgagee of real
property, who took two mortgages thereon to secure different ad-
vances to the owner, upon which real property, at the time of their
execution, a planing-mill plant was in operation, with its machinery,
engine, boiler and other equipments permanently affixed to the realty,
is entitled to precedence as to such fixtures over a prior chattel mort-
gage of the planing-mill machinery, executed and recorded, as such,
before its attachment to the realty, where it appears that the mort-
gagee of the realty made his advances and took his mortgages without
actual notice of the existence of the chattel mortgage.

ID.—LEGAL EFFECT OF VALID CHATTEL MORTGAGE AS SUCH.—So long as
mortgaged personal property remains personal property and is not
removed from the county where the chattel mortgage is recorded,
the mortgagee is protected in his lien as against subsequent purchas-
ers from the mortgagor, for they are charged with constructive notice
of the recorded chattel mortgage. But when such property is affixed
to land, a different question arises, though as between the chattel
mortgagor and mortgagee the lien might not be thus defeated.

ID.—EFFECT OF CHATTEL MORTGAGE ON PLANING-MILL PROPERTY—WHEN
AFFIXED TO REALTY—ABSENCE OF CONSTRUCTIVE NOTICE TO REAL
ESTATE MORTGAGEE.—The mere fact that the mortgaged planing-
mill property was of such a character as required it, for practical
purposes, to be affixed to land, is not sufficient, after it has become
attached to the realty, to put a subsequent mortgagee of the land
upon inquiry as to the existence of the chattel mortgage, or to
charge him with constructive notice thereof. Such subsequent mort-
gagee had the right to assume that he was purchasing real property,
regardless of the fact that it was necessarily personal property be-
fore it was affixed to and became part of the land.

ID.—CONSTRUCTION OF CODE AS TO RECORD OF CHATTEL MORTGAGE.—
Section 2963 of the Civil Code, which expressly requires chattel mort-
gages to be recorded in a separate volume, is to be construed, in
relation to its further provision that mortgages of personal prop-
erty may be acknowledged and recorded "in like manner as grants
of real property," to mean that the chattel mortgage is constructive
notice of what it contains, and cannot be regarded as notice in
anywise affecting the title to real property.

ID.—NATURE OF RECORD OF CHATTEL MORTGAGE AND OF REALTY—DUTY OF SEARCH.—A chattel mortgagee is chargeable only with notice of a prior recorded chattel mortgage on the same property, and he is not required to look to the record of the deeds or mortgages of realty for prior encumbrances. And so, also, a purchaser of the realty is bound only to take notice of the record title of the realty, and is not in any way bound to examine the records of chattel mortgages, as he is not affected by the record of a chattel mortgage upon fixtures of the realty, and a purchaser or mortgagee of the realty need only inquire for liens on real estate.

ID.—COMMENT OF SUPREME COURT IN ORDER DENYING REHEARING.—The supreme court in its order denying a rehearing approves of the ruling that a purchaser or mortgagee of land need not examine the record of chattel mortgages in so far as it applies to chattels of the character involved in this case. Upon the question whether it applies to all property mortgageable as chattels, including growing crops, no opinion is expressed, as it is not involved in this case.

ID.—UNTENABLE REPLEVIN BY CHATTEL MORTGAGEE—FINDING—PRIORITY OF REAL ESTATE MORTGAGES.—The chattel mortgagee cannot maintain an action of replevin to recover the possession or value of the planing-mill machinery mortgaged which was affixed to the land, as against the mortgagee of the land, who had purchased the same at a sale under foreclosure, and had taken his mortgages without actual knowledge of the existence of the chattel mortgage. It is held that the court was justified in finding in such action that the real estate mortgages took priority over the chattel mortgage.

ID.—FORECLOSURE OF MORTGAGES—RECEIVER OF RENTS AND PROFITS— DISPOSITION—DEFICIENCY JUDGMENT ASSIGNED—RIGHTS LIMITED TO PURCHASER—REVERSAL.—Where a receiver, appointed during foreclosure of the real estate mortgages, to receive the rents and profits of the mortgaged land, settled his accounts after the mortgagee had purchased the property under the decree, and taken a deficiency judgment against the corporation mortgagor, which had assigned all of its property to a trustee for the benefit of its creditors, and after the deficiency judgment of the mortgagor had been assigned to the same trustee, it is held that the court erred in applying the rents and profits upon such deficiency judgment, and that the judgment must be reversed, in so far as to direct the court to ascertain and apply only such portion of the rents and profits as belonged solely to the purchaser at the sale.

ID.—JUDGMENT IN FORMER ACTION NOT PLEADABLE IN BAR—RECEIVER SUED INDIVIDUALLY—DIFFERENT PARTIES.—A judgment in a former action of the same general character brought by the same plaintiff against the real estate mortgagee and the receiver, sued individually, in which the plaintiff was nonsuited as to the mortgagee, and judgment was rendered against the plaintiff in favor of the receiver as an individual, cannot be pleaded in bar of the present action against

the mortgagee individually and the receiver sued in his official capacity, who is not the same person as when sued individually, and who is not liable in his individual capacity. A judgment, to be a bar, must be between the same parties, in the same capacity, and must be "in respect of the matter directly adjudged."

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Preston & Preston, and J. E. Pemberton, for Appellant.

C. M. Crawford, and Mannon & Mannon, for Respondents.

CHIPMAN, P. J.—In appellant's opening brief he states that but two questions are presented:

"1. Is a chattel mortgage regularly executed and recorded, covering property allowed by statute to be chattel mortgaged, and that still remains in the county, defeated by a real estate mortgage, subsequently executed upon property to which the chattels had become attached, the chattels being of such character as to be worthless unless attached to real estate?

"2. In a foreclosure case where the rents, issues and profits are mortgaged and foreclosed, and a receiver appointed, but where there is no deficiency judgment, can the purchaser at foreclosure sale claim rents, issues and profits, by virtue of his purchase, that were collected prior to foreclosure?"

Defendant Hudson paid into court the funds held by him as receiver and was dismissed from the action, and defendant Rice was substituted in his place. Judgment passed that plaintiff take nothing by his action and that defendant Rice recover judgment for $458.63, being the amount of money turned over by the receiver. Plaintiff appeals from the judgment and order denying his motion for a new trial.

1. The action is for the recovery of possession or the value of certain planing-mill machinery, namely, a steam engine and boiler and certain mill machinery which plaintiff claimed were the subject of a chattel mortgage executed to him by C. E. and P. M. Beach, on April 29, 1905, recorded as a chattel mortgage May 23, 1905. Beach Brothers installed the prop-

erty on a certain lot in the town of Lakeport. Subsequently they formed a corporation known as the Lakeport Mill and Lumber Company, the Beaches being the principal but not all the stockholders therein, and removed the property in question to another lot in the town, across the street from where it was first used. The title to the lot to which the property was removed stood in the name of the corporation. On February 27, 1907, after the said machinery had been installed on this other lot, the corporation mortgaged the premises to defendant Rice to secure the payment of certain money loaned to the corporation by Rice, and, April 23, 1907, the corporation made a second mortgage to defendant Rice to secure a further loan of money, and, on May 20, 1907, a mortgage was made by the corporation to replace the first of the above mortgages to correct some informality or defect therein. These mortgages were duly recorded shortly after their execution. The court, on sufficient evidence, made the following finding:

"That at the date of each of the said mortgages all the personal property set forth and described in paragraph VI of plaintiff's complaint herein was firmly affixed and attached to the real property described in and covered by each of said mortgages in such manner that it became and was a part of said real property and was covered and mortgaged by each of said mortgages, and was included in and covered by the judgment and decree of foreclosure and sale and the sale thereunder as hereinbefore set forth."

Defendant Rice testified that when he took his mortgages he was shown the property by one of the Beaches as it then stood with the machinery affixed to the land, as the property to be mortgaged; that he had no knowledge or notice or information that there was a chattel mortgage on the machinery, and that he understood he was getting, as security for his loan, the property as it then appeared with the affixed machinery. There were some loose tools to which he makes no claim, but we do not understand that any point arises as to these. The only notice or knowledge he had of the chattel mortgage was such constructive notice as was imparted by its recordation. Hence arises the first question presented by appellant.

"Grants, absolute in terms, are to be recorded in one set of books, and mortgages in another." (Civ. Code, sec. 1171.)

"Except as it is otherwise in this article provided, mortgages of personal property may be . . . recorded in like manner and with like effect as grants or (of) real property; but they must be recorded in books kept for personal mortgages exclusively." (Id., sec. 2963.) "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value; unless: . . . . 2. It is acknowledged or proved, certified, and recorded in like manner as grants of real property." (Id., sec. 2957.) Instruments affecting the title to real property duly executed, acknowledged and recorded impart notice of their contents (Id., secs. 1207 and 1213); and an "unrecorded instrument is valid between the parties thereto and those who have notice thereof." (Id., sec. 1217.) There seems to be no provision of the code expressly making the recordation of a chattel mortgage constructive notice of its contents. Constructive notice is that "which is imputed by law" (Id., sec. 18); and "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiries he might have learned the fact." (Id., sec. 19.) Section 2963, Civil Code, *supra,* gives the recordation of a mortgage of personal property like effect with that of grants of real property, and without doubt persons about to purchase personal property which is the subject of a chattel mortgage would be charged with constructive notice of a recorded mortgage of such property if it were not at the time part of realty.

The statute enumerates certain classes or kinds of personal property and prescribes the conditions on which it may be made the subject of lien by chattel mortgage. So long as it remains personal property and is not removed from the county where the mortgage is recorded the mortgage is notice to all the world, and the mortgagee is protected in his lien as against subsequent purchasers from the mortgagor, for they are charged with notice of the mortgage. But when this same property has been permanently affixed by the mortgagor to land and its character has been changed from personalty to realty, a different situation arises. As between the mortgagor and the mortgagee the lien might not be thus defeated. But that is not the case here. Appellant claims that because the

personal property in the present case was such as required it, for practical purposes, to be affixed to land, this fact alone was sufficient to put the respondent on inquiry and made the chattel mortgage constructive notice to him. We cannot give this fact such compelling force. We think that the purchaser of a town lot on which, at the time, there is a building containing a planing-mill plant in operation, with its machinery, engines and boilers and other equipment permanently attached to the land, would have the right to assume that he was purchasing real property regardless of the fact that this equipment was necessarily personal property before it was attached to and became part of the land. The question here must be solved in the light of the facts. Had respondent searched the records of deeds, as was his duty, he would have found, what is conceded, that title to the lot was in the corporation, and nothing more. As he was purchasing from the corporation, had he searched the records of chattel mortgages for the name of the corporation as mortgagor, he would not have discovered the mortgage, for it was not made by the corporation. The statute, as we have seen, requires mortgages of personal property to be separately recorded and in a different book from the record of deeds. The record is constructive notice of transactions authorized to be made matter of record therein but no further. That is to say, the record is constructive notice that the property mortgaged is personal property falling within the class made the subject of chattel mortgage.

In *Watkins* v. *Wilhoit,* 104 Cal. 395, [38 Pac. 53], an assignment was made for the benefit of creditors of all the assignor's real and personal property and was filed for record and recorded in a book entitled "Book G Miscellaneous." A creditor of the assignor subsequently obtained judgment against the assignor, and his contention in the case was that, being a nonconsenting creditor, and the assignment having included real property, it was void as to him, because it was not recorded in accordance with the provisions of article IV of the Civil Code, sections 1213–1217 and 3466. Speaking through Chief Justice Beatty, the court said: "The whole object of article IV of the chapter on recording transfers is to prescribe the effect of failing to record upon *subsequent purchasers or mortgagees.* An assignment of real property

for the benefit of creditors ought to be subject to these provisions as much as any other transfer of real property, because it is as much within the policy of the statute as any other transfer of such property. Subsequent purchasers and mortgagees are entitled to the same notice in one case as in the other, and have a right to rely on the same means of knowledge as to the true state of the title when parting with value on the faith of the apparent ownership. But with respect to the creditors of the assignor who do not part with anything, the case is totally different and they are not within the policy of these provisions. A transfer may be valid as to them although void as to subsequent purchasers in good faith for value." It is then shown that assignments for the benefit of creditors are not required to be recorded as prescribed in chapter IV, *supra,* but in accordance with sections 3463 and 3464 of the Civil Code. Thus, an assignment of real property for the benefit of creditors is not notice to mortgagees of such property by virtue alone of its being recorded as prescribed by the statute, although it is notice as to creditors. Said the court: "To determine what will give such constructive notice [i. e., notice of the transfer of real property] we look to section 1213 et seq. of the Civil Code, but to determine what is recording without reference to the question of notice to subsequent purchasers, we look to section 1170 of the Civil Code," which requires only that the instrument, duly acknowledged, be "deposited in the recorder's office, with the proper officer."

If it be true, as said in the opinion, that "to determine what will give constructive notice" of the transfer of real property "we look to section 1213 et seq. of the Civil Code"—i. e., to the sections embraced in article IV—it must follow that the purchaser need look no further unless, as in the cases of mortgages of real property, which are "conveyances" (section 1215), some statute requires it, and we have no such statute. In speaking of sections 1170 and 1213, the court said, in *Cady* v. *Purser,* 131 Cal. 552, 556, [82 Am. St. Rep. 391, 63 Pac. 844]: "Each must be construed with reference to the purposes for which it was enacted." That is, a conveyance of real property is deemed to be recorded where it complies with the provisions of section 1213. And so of a chattel mortgage; and, when the statute says, as in section 2963, Civil Code, that mortgages of personal property may be acknowledged and re-

corded "in like manner and with like effect as grants of real property," it means that the chattel mortgage is constructive notice of what it contains, and cannot be regarded as notice in any wise affecting the title to real property. Possession by the mortgagee of mortgaged personal property is not essential to the validity of his mortgage. In examining the record for prior encumbrances must he look to the record of deeds of realty? We think not. And if he looked, what would he find but evidence of the transfer of land and its improvements undescribed? Conversely, the purchaser of land need not look to the record of chattel mortgages.

Chattel mortgages are to be distinguished from conditional sales where title remains in the seller until the article is paid for. Mr. Jones gives considerable attention to the subject. Pointing out that there is some conflict of authority, he says: "The better opinion is that a purchaser of the realty is bound only to take notice of the record title of the realty, and is not in any way bound to examine the records of chattel mortgages, for he is not affected by the record of a chattel mortgage upon fixtures of such realty." (Jones on Chattel Mortgages, sec. 134.) In *Pierce* v. *George,* 106 Mass. 78, [11 Am. Rep. 310], the owner of a machine-shop gave a chattel mortgage on the machinery therein, before it was set up, but in contemplation that it should be set up and attached to the building. He afterward, and after it was set up, gave a mortgage on the land and building. *Held,* that the second mortgagee could hold the machinery against the first mortgagee. (Syllabus.) (*Brannan* v. *Whittaker,* 15 Ohio St. 446; *Case Mfg. Co.* v. *Garven,* 45 Ohio St. 289, [13 N. E. 493]; *Rowland* v. *West,* 62 Hun, 583, [17 N. Y. Supp. 330].) Mr. Bronson, in his work on Fixtures, at section 70a, says: "Constructive notice is not given to a mortgagee of the realty in respect to an existing chattel mortgage upon articles attached to the realty by filing and recording the same as a chattel mortgage, for a purchaser or mortgagee of real estate need only inquire for liens on real estate. The record of a chattel mortgage is constructive notice only of an encumbrance on chattels."

The case of *Tibbetts* v. *Moore,* 23 Cal. 208, relied on by appellant, was a case where the mortgagor mortgaged a quartz-mill. He afterward purchased a steam engine and boiler and

gave a chattel mortgage thereon and so placed the machinery in the quartz-mill that it became a part of the realty. It was held that the chattel mortgage took priority. The court seems to have placed its decision on the fact that the mortgage on the quartz-mill was recorded before the boiler and engine were attached to the mill and formed no part of the security then looked to by the mortgagee. It further appeared as of some apparent consequence, for the court said: "Both mortgages are executed and recorded as chattel mortgages under the statute; and treating them in that character, there can be no doubt that the Lombard mortgage [the chattel mortgage] has priority over the other so far as relates to the property included in it."

Our conclusion is that the trial court was justified in finding that defendant Rice's mortgage took priority over plaintiff's chattel mortgage.

The rule may work hardship in some cases, but when we consider the numerous classes and kinds of personal property which, by the statute, are made the subject of chattel mortgage and the difficulty that may arise in many cases in identifying the personal property purported to be mortgaged as the same has been affixed as part of the realty, there would seem to be much to commend the rule as Mr. Jones states it. In *Brannan* v. *Whittaker, supra,* the court said: "It devolved upon the chattel mortgagee who sought to change the legal character of the chattels after they were annexed to the realty, either to pursue the mode provided by law for encumbering the kind of estate to which it appeared to the world to belong, and for giving notice of such encumbrance, or otherwise to take the risk of a loss in case it should be sold and conveyed as a part of the real estate to a purchaser without notice."

2. It appears from the findings that defendant Rice commenced his action to foreclose the mortgages executed by the Lakeport Mill and Lumber Company, on October 25, 1907, in which action the Lakeport Mill and Lumber Company, M. B. Elliott, plaintiff in the present action, the Collier Brothers, copartners, and George J. Foutch were defendants. On September 16, 1908, Rice, as plaintiff, recovered judgment and, on January 9, 1908, defendant Hudson was appointed receiver in said foreclosure action. He qualified as such re-

ceiver on January 14, 1908, and acted in that capacity until April 18, 1910, and collected the rents, issues and profits of the mortgaged premises, including the property here in dispute, amounting to the sum of $458.63 after deducting the expenses of his administration as allowed by the court, which said sum is one of the subjects of the present controversy. The court further found that, on January 4, 1909, Rice became the purchaser of the mortgaged premises at sheriff's sale; that a deficiency judgment for $528.17 was docketed in his favor which remains unpaid; "that defendant Rice is entitled to have the moneys on deposit in this action applied on account of said deficiency judgment"; that, since the commencement of the present action, and on the second day of January, 1910, the said Rice "received a sheriff's deed for the whole of the property covered by the two mortgages aforesaid; that thereupon he became the owner in fee and seised in fee, in the possession and entitled to the possession of all of the real property covered by the said two mortgages, including the property described in paragraph VI of plaintiff's complaint, all of the latter being affixed and attached to and a part of said real property." The court also found as follows: "That the plaintiff herein was, at the date of commencement of the said foreclosure action [October 25, 1907], the owner of the unexpired portion of a leasehold estate for two years from and after October 8, 1907, in the real property in the county of Lake, state of California, upon which said personal property was situated, but that said leasehold estate was subject to and subordinate to the liens of the said two mortgages hereinabove referred to, and was foreclosed in the said action brought to foreclose said mortgages."

The court also found that in the decree of foreclosure was the following reservation: "All respective adverse claims of plaintiff and of defendant M. B. Elliott, in and to the engine, boiler and machinery described in the answer of said defendant, are not determined or adjudicated in this action, or by this decree, but are expressly reserved.

"But all rights of said defendant, Elliott, as lessee in and to the lot described in the complaint (exclusive of said boiler, engine and machinery), are found and adjudged to be subsequent and subject to plaintiff's mortgages, and are foreclosed hereby, while the question whether or not, as between

the parties to this action, said boiler, engine and machinery form part of the realty, is also expressly reserved.

"The rights of said defendants, Page B. Collier and William B. Collier, Jr., in and to the part of the premises described in their answer, arising out of any matter prior in date to the execution of plaintiff's mortgages (if any such rights they have), are not adjudicated or determined in this action or by this decree, but are expressly reserved."

It further appeared that, on March 5, 1909, a settlement agreement was entered into between the Lakeport Mill and Lumber Company and the Beaches on the one part and the creditors of the said corporation on the other part, whereby the corporation assigned all its property to Herbert V. Keeling as trustee for the benefit of all its creditors. Among the creditors who assigned their claims was defendant Rice in the amount of $528.17, which is the exact amount of his deficiency judgment in the foreclosure suit. Among other paragraphs in this assignment is the following:

"Fourth. That no claim be made by said creditors to the rents of the mortgaged premises heretofore foreclosed in the superior court of the county of Lake, state of California, in the action of *D. A. Rice* v. *Lakeport Mill and Lumber Company et al.*, and which said rents are now in the hands of, or may hereafter be received by, a receiver heretofore appointed by said superior court, saving and excepting such claim hereto as the said D. A. Rice may have by virtue of his right thereto (thereto?) as the purchaser of said mortgaged premises at the foreclosure sale."

It does not distinctly appear that defendant Rice's claim of $528.17 represented his deficiency judgment, but as he had no other claim and as the amounts are identical, it is not to be doubted that they are the same, and this seems not to be questioned.

Some controversy has arisen over the meaning of this fourth paragraph of the assignment, respondent claiming that "it was intended by Rice to reserve all his rights to the fund now in the hands of the court, and the trial court, after hearing all of the witnesses and documentary evidence before it, found that said assignment did not prejudice Rice's right in said deficiency judgment." Rice testified as follows: "I purchased this property at a foreclosure sale . . . and I took a deficiency

judgment. . . . Since that time the deficiency judgment has been settled. I signed my rights all away to it. There is no deficiency judgment in my favor against anybody.'' It seems to us that Mr. Rice took the correct view of his own agreement and that his deficiency judgment was duly transferred to trustee Keeling. Rice reserved only his rights as purchaser under the foreclosure sale, which are no greater than if a stranger to the action were the purchaser. The trial court adjudged that he was entitled to the funds turned over by the receiver, which represented the rents, issues and profits of the property—both the lot proper and the disputed personal property—by virtue of his deficiency judgment and not as a purchaser at the foreclosure sale. In this we think the court was in error. He no longer had any rights as a deficiency judgment creditor, for they passed to the trustee, and what, if any, rights he had to this fund as a purchaser at the foreclosure sale are not ascertained or found by the court. Whether or not Rice's proportion of the funds as such purchaser can be ascertained from the record, as it now stands, would be difficult to determine, and, if it could be determined, we have no power to make a finding as to the amount.

3. The record contains a copy of the judgment-roll in an action commenced by this plaintiff against Hudson in his individual capacity and defendant Rice. The purpose of that action seems to have been the same as in the present action. The judgment was in favor of defendant Hudson, and a judgment of nonsuit was entered as to Rice and it is now pleaded in bar. Subsequently the court granted leave to plaintiff to bring the action against Hudson in his capacity of receiver and that is the present action. We do not think the judgment in the former action was a bar to this action. Hudson, individually, is not the same person as Hudson receiver. Among other requirements of a judgment pleaded in bar is this: that the action must be between the same parties in the same capacity and the judgment must be ''in respect to the matter directly adjudged.'' (Code Civ. Proc., subd. 2, sec. 1908; *Laguna etc. Dist.* v. *Charles Martin Co.*, 5 Cal. App. 172, [89 Pac. 993]; *Hughes* v. *United States*, 4 Wall. 232, [18 L. Ed. 303].) That a receiver is not liable in his

individual capacity was decided in *Tapscott* v. *Lyon,* 103 Cal. 305, 306, [37 Pac. 225].

The judgment is affirmed except in so far as it adjudges the funds turned over by the receiver to belong to defendant Rice, and, as to such funds, the judgment is reversed and the trial court is directed to ascertain to what portion, if any, of such funds Rice is entitled as purchaser at the foreclosure sale and render judgment accordingly, each party to pay his own costs incurred on this appeal.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 3, 1912, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing in this court is denied.

We are satisfied with the rule stated in the opinion of the district court of appeal, to the effect that a purchaser or mortgagee of land need not examine the record of chattel mortgages, so far as it applies to chattels of the character involved in this case. Whether or not the rule applies to all property mortgageable as chattels—growing crops, for example—is a question not involved in this case, and upon which we express no opinion.