ROBERT M. STELL *v.* D. A. PASCHAL.

1. VINDICTIVE DAMAGES.—See facts not authorizing.
2. PRACTICE—INSTRUCTIONS.—A party failing to ask instructions which might have prevented an erroneous verdict, is not thereby estopped from asking a new trial on account of an erroneous verdict upon the charge given and the facts.

3. CONSTRUCTION OF CONTRACT.—See discussion as to the meaning of terms in a mortgage.

4. A mortgage upon machinery in a factory, and on such as may be added to the same, does not include machinery placed for exhibition by one not a party to the mortgage upon the land covered by the mortgage.

APPEAL from Smith.   Tried below before the Hon. Z. Norton.

October 6, 1870, Daniel A. Paschal sued R. M. Stell, alleging that on 28th September, 1870, Stell " did wrongfully and forcibly take from the possession" of one James Horton, plaintiff's agent, a certain cotton press, the property of plaintiff, and which press Horton was hauling to Kaufman county-from Tyler, in Smith county.   Judgment was asked for the wagon, or its value, damages, &c.

Stell answered that he was the administrator of the estate of B. H. Hambrick, and, as such, he claimed the right to the possession of the cotton press, as against plaintiff, under three mortgages held by him as administrator, one executed by J. M. Douglas and one by G. W. Humphries to plaintiff's intestate, each for one hundred and nineteen ounces of gold coin; the other mortgage executed by Douglas and Humphries to Elizabeth Hambrick, widow of plaintiff's intestate, for fifty-nine ounces of gold coin, the mortgage having been given to her while administering, under the statute, the community property of her husband's estate. The mortgages appended to the answer conveyed certain lands and the interest of the mortgagors in a " steam mill, cotton gin and press, engine, boiler, machinery, and apparatus attached thereto or connected therewith, * * * and in all other machinery and improvements that may be hereafter placed therein or attached thereto."

By amendment, plaintiff alleged special damages caused by the seizure of the cotton-press, in loss of gains from his gin for four months, plaintiff during said time being unable to procure a new press.

The testimony showed that, in August, 1870, Paschal

bought of Humphries, agent of Douglas, the cotton press, worth $250; that in September following Humphries delivered it to Horton, a wagoner, to be hauled to Kaufman county for Paschal; that on the road Stell met Horton, learned that the cotton press had been taken from the factory lot, (included in the mortgages,) upon which he claimed it, and threatened prosecution against Horton if he did not surrender the property; that thereupon Horton left the press at Stell's; that afterwards Paschal demanded the press, informing Stell that he (Paschal) had bought it, and that it was his property; that defendant had retained possession of it until the time of the trial, (26th March, 1873;) that Paschal owned a fine Eagle-Saw gin in Kaufman county, run by steam power, capable of ginning from six to eight bags per day, and that he ginned and put up cotton in bales for the public; that he was unable to procure another cotton press during the ginning season of 1870, and that he had to haul his lint cotton that season to another cotton press in the neighborhood, to get it baled; that during that season he lost all his profits as a ginner and packer of cotton, amounting to about $750, in consequence of his failure to get the press he had bought of Douglas and his inability to procure another; that he paid Horton, the wagoner, seventy dollars for coming to Smith county for the press.

Defendant read the three trust deeds or mortgages as pleaded, and proved that B. H. Hambrick, John M. Douglas, and George W. Humphries were partners in the steam mill and factory in Tyler, Smith county, under the firm name of "B. H. Hambrick & Co.," and that the property embraced in the mortgages to Hambrick, and the mortgage to Elizabeth Hambrick, his widow, was the property belonging to said firm in Tyler; that B. H. Hambrick died in 1868, and his said widow administered the community property for a time, and afterwards Stell had been appointed administrator; that the cotton press was erected

on the premises of the said firm of B. H. Hambrick & Co., and was used as a press for bailing cotton by the "Tyler Manufacturing Company," successors to B. H. Hambrick & Co.; that Douglas and Humphries were members of the "Tyler Manufacturing Co.;" that the cotton press was removed by plaintiff from said premises.

Stell testified that he acquired possession of the press from Horton, a wagoner, who said he was hauling it for Paschal; that he used no force to get it; that he told Horton he was liable to the law for moving the press from the county, and threatened to attach the press and wagon; that he used no fraud or force, but honestly believed he was doing his duty as administrator of B. H. Hambrick; that a few days afterwards Paschal exhibited Humphries' affidavit that the press was not included in the deeds of trust.

In rebutting, Paschal proved that the press had been temporarily put up on the Tyler Manufacturing Company's grounds for exhibition as a sample press to enable one B. K. Smith, who put it up, to sell the patent rights as agent of said press; that said press was a portable Brooks press, and had no connection with the Tyler Manufacturing Company, except to bail cotton as a specimen for said agent; that afterwards, in a settlement between Smith and Douglas, Douglas became the owner of the press and sold it to Paschal.

The charge of the court sufficiently appears in the opinion.

The verdict was " for the plaintiff the sum of two hundred and fifty dollars, which sum may be discharged by the defendant delivering to plaintiff the cotton press in dispute within ten days. We also find for the plaintiff the further sum of five hundred dollars for his damages sustained by the wrongful taking and detaining of the cotton press by defendant."

Judgment was rendered in accordance with the verdict. Motion for new trial was overruled, and Stell appealed.

Opinion of the court.

*T. W. Jones* and *Stephen Reaves*, for appellant, cited Smith *v.* Sherwood, 2 Tex., 460; Graham *v.* Roder, 5 Tex., 77; Gillies *v.* Wofford, 26 Tex., 77; Sedgwick on Damages, 86–114; Selden *v.* Cash, 20 Cal., 56; Cincinnati *v.* Evans, 5 Ohio St., 594; Donnell *v.* Jones, 17 Ala., 689; Giles *v.* O'Toole, 4 Barb., 261; Brown *v.* Tyler, 34 Tex., 168; Conard *v.* Pacific Ins. Co., 6 Peters, 262; Bell *v.* Cunningham, 3 Peters, 69; 10 Peters, 81; Spence *v.* Install, 30 Tex., 147; Chandler *v.* Fulton, 10 Tex., 2; Lee *v.* Hamilton, 12 Tex., 413; 24 Tex., 619; 25 Tex., 217; 26 Tex., 127.

*Robertson & Herman*, for appellee.

MOORE, ASSOCIATE JUSTICE.—It is evident from the amount of the verdict the jury gave to appellee vindictive damages, or allowed him the amount of profits which he supposed he would have realized by the use of his gin, but for the wrongful detention by appellant of the press sued for. On either hypothesis it is quite manifest that the verdict is erroneous. That in a suit of this kind parties cannot recover for imaginary and speculative profits which they might, it is hypothetically supposed, have realized but for the wrongful acts of which they complain, is too manifest for discussion. It is equally obvious that there is nothing shown in this case which warrants the giving of vindictive damages.

If appellee succeeds in establishing his claim to the property in dispute, he is entitled, under the prayer of his petition, to an alternative judgment for the press sued for, or its value, and actual damages sustained by its wrongful detention, which, so far as we can see from the case as it is presented by the record, would be the amount paid for the press, and to the wagoner who was employed to haul it, and interest from the date of payment to the finding of the verdict. (Gillies *v.* Wofford, 26 Tex., 76; Brown, Adm'r, *v.* Tyler, 34 Tex., 168; Bell *v.* Cunningham, 3

Pet., 69; Concord *v.* Pacif. Ins. Co., 6 Peters, 262, 287; Sedg. on Dam., 615.)

It may be possible, as is insisted by appellee's counsel, if appellant had asked of the court proper instructions for the jury as to the measure of damages, that they would not have fallen into the error shown by their verdict. But be this as it may, the failure of appellant to ask such instructions does not estop him from complaining of a clearly erroneous verdict, or justify the court in refusing a motion for a new trial upon this ground, even if there was no affirmative error in the charge of the court as given the jury.

The court evidently, however, should have instructed the jury as to the legal effect of the instruments in writing offered in evidence by appellant in justification of his detention of the property sued for. And there was error in submitting their construction and legal effect to the jury, without instructions to guide them in the conclusion which should be drawn from these instruments, in connection with the other evidence submitted to them, whether instructions were asked by appellant or not. It was an error, though, of which appellant could not complain, unless it reasonably appeared that the jury misconstrued the instruments or reached an improper result, owing to the failure of the court to decide the questions of law, instead of submitting them to their determination.

The claim of appellant to the press, under the mortgages upon which he relies, presents a mixed question of law and fact. Of law, in so far as their construction is necessary to determine the legal effect of the contracts evidenced by them; of fact, in ascertaining whether the property in dispute is shown by the evidence to be a part of the property included in said contracts.

The clear import of these mortgages is to convey, for the purposes for which they were executed, the steam mill, gin press, engine, boiler, and all the machinery and apparatus

thereto attached, which were on the premises described in the mortgages at the time they were executed, and all other machinery which should be subsequently placed on the premises by the mortgagors, or either of them, for the purposes of the business carried on by them on said premises at that time.  If, therefore, the press was placed on the premises described for the business in which the machinery on said premises had been previously used, for the purpose of supplying such as had been worn out or destroyed, or to enlarging and extending the business, it came within the terms of the instruments, and the lien given by them attached to it.  But if it was not placed on said premises by the mortgagors, but by some other person who was the owner of it, and it was not done for the purpose of or in connection with the business carried on by them on said premises, but merely to exhibit said press to the public, and to test its utility, this undoubtedly did not subject it to the mortgages.  And though it was afterwards purchased by Douglass, one of the mortgagors, if it was not bought with the intent of and was not in fact applied in any way to the uses and purposes of the business carried on upon said premises, but remained thereon solely as a place of deposit and safe keeping, then it is equally clear it did not thereby come within the terms and stipulations of the contracts by virtue of which appellant asserts a lien upon it.

There are no other questions presented by the record of sufficient importance to require notice.

For the errors already indicated the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.