[Sac. 523.   Department Two.—November 6, 1899.]

L. E. C. JORDAN, Respondent, v. B. F. MYRES et al., Defendants.   JOSHUA HENDY MACHINE WORKS, Appellant.

MECHANICS' LIENS — MINING CLAIM — LEASED MACHINERY — PERSONAL PROPERTY.—Under section 1183 of the Code of Civil Procedure, a person performing labor on a mining claim, for one having a contract of purchase thereof, to which the latter has affixed mining machinery leased by him, under a lease the terms of which were sufficient, as between himself and the lessor, to continue the identity of the machinery as the personal property of the lessor, is not entitled to a lien upon such machinery.

ID.—NOTICE OF EXEMPTION.—To secure such exemption, the lessor of the machinery is not required to give the notice provided for by section 1192 of the Code of Civil Procedure, as he was not the owner of the mine and had no interest in it.

APPEAL from a judgment of the Superior Court of Placer County.   J. E. Prewett, Judge.

The facts are stated in the opinion.

F. P. Tuttle, for Appellant.

Jo Hamilton, and George W. Hamilton, for Respondent.

CHIPMAN, C.—Foreclosure of laborers' and materialmen's liens.   Plaintiff brings the action for himself and as assignee of thirteen other lienholders.   The court gave judgment for plaintiff, from which defendant, Joshua Hendy Machine Works, appeals on the judgment-roll alone.

From the findings it appears that defendant Myres was and now is the owner of the mining property commonly called the "Calf Pasture Quartz Mine."   On February 8, 1896, he entered into a contract of sale and purchase of the property with defendant Berry, who, before any work was begun upon said mine

or any material furnished therefor, assigned to defendants Walter, Johnson, Ray, and Ward each an undivided one-fifth interest in said contract, and they then entered into possession of the property. It was agreed in their contract, among other things, that in case Berry failed to purchase the mine as agreed he should leave the mine properly timbered and turn the same over to Myres in good mine order free from any encumbrances, "but may remove any engine or other hoisting machinery he may have placed on the mine above ground." On March 24, 1896, defendant, the Joshua Hendy Machine Works, a corporation, entered into a written contract of lease with defendants Walter, Johnson, and Berry, which was recorded in the office of the county recorder of Placer county on April 4, 1896, whereby the corporation defendant leased to them a certain engine and certain other machinery, and the latter agreed to pay as rental therefor certain stipulated sums, on payment of which they were to have the right of purchase upon further payment of one dollar. About March 29, 1896, these five defendants took possession of said machinery from defendant corporation and placed the same on said mine, and "the same was permanently affixed and attached thereto by means of bolts and screws; that said machinery was necessary, and was thereafter, during the times in the complaint alleged, actually used in the working and operating of said mine." On July 30, 1896, defendant corporation served notice on defendants Berry, Walter, and Johnson that unless, within five days, they paid the balance due on said contract it would declare the same rescinded and take possession of the property. This demanded payment was not made. The work done and the materials furnished, for which liens are claimed, occurred before July 30, 1896. The liens were filed on the mine and the machinery in question, and the actions were commenced about the last-named date.

Appellant contends that the personal property leased by it retained its identity as personal chattels and was not subject to the liens, notwithstanding it had become fixed to the realty by the lessees. It was held, under a similar lease, in *Hendy v. Dinkerhoff*, 57 Cal. 3, 40 Am. Rep. 107, that as between Hendy and his lessee Lampson, and also as between Hendy and defendants who had entered into a contract of sale and purchase as to

the mine with Lampson, much the same as in this case, the property must be treated as personal property. The case is authority for holding that as to all the defendants in the present case, including the owner of the mine, the machinery should be treated as personal property. In *Hamilton v. Delhi Min. Co.*, 118 Cal. 148, the trial court enforced a laborer's lien against certain leased machinery which had become affixed to the realty, but denied the lien as to certain other of the leased machinery not yet affixed. Plaintiffs appealed from the judgment, which raised the question only as to the unaffixed machinery. No question arose as to the correctness of the judgment concerning the personal property that had become affixed to the realty. The case, therefore, does not directly decide the question here, nor does it, for that matter, even impliedly do so. The case of *Williams v. Mountaineer Gold Min. Co.*, 102 Cal. 134, also cited by respondent, decides, upon the point in question, nothing more than that the lien should be taken against the mining claim and not against the specific structure upon the mine. The only notice which respondent had of the lease, under which appellant claims, was by virtue of its being recorded in Placer county. But, as the statute makes no provision for thus giving notice of such instruments, we must deal with the case as though respondent had no notice. Respondent claims that appellant should have protected itself by posting the notice required of the owner of the lands or the person having or claiming an interest therein, as directed by section 1192 of the Code of Civil Procedure. Appellant was not the owner of the mine, neither had it any interest in it. We do not think appellant was such owner or person as is contemplated by that section. Appellant might have posted notice as a means of giving actual notice of its claim upon the personal property, but we do not think it was required to do so, nor would the mere posting of the prescribed notice have been conclusive of actual notice the same as in the case of the owner or a person claiming an interest in the mine itself. It is settled law that this personal property cannot be treated as part of the realty so far as the owner of the mine and the defendants are concerned. (*Hendy v. Dinkerhoff, supra.*) The question is, Must it be so treated as to respondent? Section 1183 of the

Code of Civil Procedure provides as follows: "And any person who performs labor in any mining claim or claims has a lien upon the same, and the works owned and used by the owners for reducing ores from such mining claim or claims, for the work or labor done or materials furnished by each respectively," et cetera. This section contemplates that the lien shall attach to the property of the owner and not to the property of some other person. But it is said that if another person allows his personal property to become affixed to the realty as part of it without giving notice of his claim, the lien will attach to it as the property of the owner of the mine; that in this case plaintiff had a right to believe and act upon appearances, and if he or appellant is to suffer it should be the latter through whose neglect the respondent was misled.

*Hill v. Sewald,* 53 Pa. St. 271, 91 Am. Dec. 209, was a case where Hill brought trover against Sewald for the value of two boilers and appurtenances. Sewald had conveyed a piece of land to one Snodgrass on which was a steam mill, and took from him a mortgage to secure part of the purchase money. The boilers having worn out, Snodgrass made an agreement with Hill, the plaintiff, by which Snodgrass hired two boilers at a stipulated rental per month and placed them in the mill, reserving the right to remove them whenever he desired to do so. Four years after the boilers were placed in the mill, Sewald purchased the premises at foreclosure sale. Hill gave notice at the sale of his claim to the boilers, and after the sale demanded their return, which was refused. The question was, whether the boilers had, in legal contemplation as they had in fact, been incorporated into the realty and passed to the purchaser. The court said: "It is not the character of the physical connection with realty which constitutes the criterion of annexation, as the authorities hereinafter abundantly show. . . . . When these boilers and their connections were built into the mill of Snodgrass, it is clear it was with no intention on his part, or those who acted for him, to affix it to the realty as his property, or with an intention to make it his own by a wrongful conversion. They were placed there as the personal chattels of Hill, under a valid contract of hiring for their temporary use, the right of removal being expressly reserved. How, then, can it

be said that a chattel is converted into realty, when it was neither the intention of the owner of the chattel nor that of the owner of the freehold to annex it?"

In *Stell v. Paschal*, 41 Tex. 640, mortgages had been given upon a "steam mill, cotton gin and press, . . . . and in all other machinery and improvements that may be hereafter placed therein or attached thereto." A press had been temporarily put upon the mortgaged premises for exhibition as a sample press to enable one Smith, who put it up, to sell the patent rights as agent of said press; afterward, it was purchased by Douglass, one of the mortgagors. The court held that if the press had been placed on the premises for the purpose of supplying such as had been worn out or destroyed, or to enlarge the business, it came within the terms of the instruments, and the lien attached. "But if it was not placed on said premises by the mortgagors, but by some other person who was the owner of it, and it was not done for the purpose of or in connection with the business carried on by them on said premises, but merely to exhibit such press to the public, and to test its utility, this undoubtedly did not subject it to the mortgages. And though it was afterward purchased by Douglass, one of the mortgagors, if it was not bought with the intent of and was not in fact applied in any way to the uses and purposes of the business carried on upon said premises, but remained thereon solely as a place of deposit and safekeeping, then it is equally clear it did not thereby come within the terms and stipulations of the contracts by virtue of which appellant asserts a lien upon it."

The case of *Hendy v. Dinkerhoff, supra,* clearly recognizes the principle that it is the intention of the parties which determines whether personalty is to retain its character as such. (See, also, *Fratt v. Whittier*, 58 Cal. 126; 41 Am. Rep. 251; *Lavenson v. Standard Soap Co.*, 80 Cal. 245; 13 Am. St. Rep. 147; *Miller v. Waddingham*, 91 Cal. 377; 1 Jones on Mortgages, sec. 429.)

The general rule is as to sales upon execution, that the purchaser acquires thereby only such title and interest as the judgment debtor had, and the rule is the same whether the sale follows the lien of attachment or is upon execution without such lien; and the rule also applies at sales under foreclosure of mort-

gages upon real estate—the purchaser ordinarily takes the risk of title. (*Boggs v. Fowler*, 16 Cal. 559; 76 Am. Dec. 561.) We cannot see in what way the sale upon foreclosure of a mechanic's lien can be said to carry any greater interest than the owner of the property had at the time the lien attached, whatever may be the rule as to a *bona fide* purchaser or mortgagee of the land without notice. In the case before us, the owner of the mine never had any interest in the personal property, and he acquired no interest in it, as against appellant, by its being affixed to the realty (*Hendy v. Dinkerhoff, supra*), and appellant's lessees expressly reserved the right to remove this machinery. It must result that respondent secured no lien upon this personal property by virtue of the statute, for he could only have a lien upon the property of the owner of the mine. Any other view of the matter would, we think, greatly retard development, especially of mining property, where it often becomes necessary for the owner or his lessee to borrow or hire the use of machinery which for the time being, in order to utilize it, must be affixed to the realty. No one would have the temerity to loan or hire machinery to another person for such purposes if he had to take the risk of losing his property through the liens of laborers or materialmen working in or supplying material to the mine. The courts find no difficulty in upholding the rights of a vendor under a conditional sale of personal property as against the creditors of the vendee, for the reason that the title remains in the vendor; and we can see no reason why the rule should not be the same where the owner of the personal property hires or leases it. The fallacy of respondent's position is in assuming that the situation of the personal property in its relation to the realty is the sole criterion by which to judge of its character; whereas, "the intention with which an article of personal property is attached to the realty, whether for temporary or permanent improvement, has within certain limits quite as much to do with the determination of the question whether it has thereby become a permanent fixture, as has the way and manner in which it is attached." (1 Jones on Mortgages, sec. 429.)

In contemplation of law the character of the machinery belonging to appellant did not change its character as personal property by the use to which the lessees put it, and it was error

to include it in plaintiff's liens. The judgment should be modified by excluding this machinery from its operation, and otherwise the judgment should be affirmed.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment is modified by excluding the engine and machinery claimed by appellant from its operation, and otherwise the judgment is affirmed. McFarland, J., Temple, J., Henshaw, J.