[S. F. No. 8685. In Bank.—July 9, 1920.]

## THE OAKLAND BANK OF SAVINGS (a Corporation), Appellant, v. CALIFORNIA PRESSED BRICK COM. PANY et al., Respondents.

[1] CONDITIONAL SALE—SUBSEQUENT PURCHASER WITHOUT NOTICE— RIGHTS OF PARTIES.—The owner of personal property has the right to make an agreement to sell the same and deliver possession thereof to the buyer, upon the condition that the title thereto shall, nevertheless, remain in the seller until the price agreed on has been fully paid, and the title so withheld by the owner will, until full payment, be superior to that of a subsequent mortgage or purchase of such personal property from the buyer, even if such subsequent mortgage or purchase was made without knowledge or notice of the reservation of title and full value of the property paid.

[2] ID.—CONVERSION OF PERSONALTY INTO REALTY—RIGHTS OF BONA FIDE MORTGAGEE WITHOUT NOTICE OF CONDITIONAL SALE CONTRACT.—Where certain boilers and heavy machinery after delivery

---

2. Right of seller of chattel retaining title or lien, as against purchaser of realty to which it is affixed by owner, note, 49 L. R. A. (N. S.) 396.

under a conditional sale contract are affixed to the land of the buyer so as to become a part of the realty under section 660 of the Civil Code, the title of the seller is subject to the lien of a subsequent mortgagee of the realty in good faith without notice of the contract.

APPEAL from a part of a judgment of the Superior Court of Alameda County. William H. Donahue, Judge. Reversed.

The facts are stated in the opinion of the court.

McKee & Tashiera and Peck, Bunker & Cole for Appellant.

Thomas C. Huxley for Respondents.

SHAW, J.—The California Pressed Brick Company executed a deed of trust conveying to Bankers Trust Company certain property, real and personal, comprising the plant in use by the Brick Company for the making of pressed brick and similar articles, as security for payment of a series of bonds issued by the Brick Company, amounting to one hundred thousand dollars. Afterward, the Oakland Bank of Savings was duly substituted as trustee. Bonds to the amount of ninety-three thousand four hundred dollars have been issued and are unpaid. The object of this action is to foreclose the lien of said trust deed upon said property and thus enforce payment of the bonds.

The defendants, Curtner and McWhinney, made answer, alleging that they are the owners of certain boilers, machinery, and personal property conveyed by said deed of trust and embraced in said plant, and that their title thereto is superior to that of the trustee. They claim as successors in interest of C. N. Raymond Company, a corporation, which was the seller in an agreement for the conditional sale of the property to the Brick Company providing that the title should remain in the seller until the price was fully paid, notwithstanding the delivery of possession to the buyer. The conditional sale was made, the property delivered, and the boilers and the heavy machinery affixed to the land in the manner specified in section 660 of the Civil Code, prior to the execution of the trust deed. The portion of the property not so affixed is not in controversy, it being conceded that the reservation of title in the seller is good with respect to that part of the property, as against the subsequent deed

of the buyer to the trustee. Prior to the judgment the property was, in pursuance of a stipulation between the parties, converted into money which was deposited to await the event of the action.

The court below was confronted with the question which party, under these circumstances, had the superior title. It decided that Curtner and McWhinney, as successors to the title of C. W. Raymond Company under the conditional sale, had title superior to that conveyed by the trust deed from the Brick Company, and gave judgment foreclosing the trust deed as to the other property, but directing that the money so deposited should be paid over to Curtner and McWhinney free from all claims of the plaintiff. The plaintiff appeals from the part of the judgment in favor of said defendants.

[1] The owner of personal property has the right to make an agreement to sell the same and deliver possession thereof to the buyer, upon the condition that the title thereto shall, nevertheless, remain in the seller until the price agreed on has been fully paid, and the title so withheld by the owner will, until full payment, be superior to that of a subsequent mortgagee or purchaser of such personal property from the buyer, even if such subsequent mortgage or purchase was made without knowledge or notice of the reservation of title and paid full value for the property. (*Perkins* v. *Lamphier,* 36 Cal. 157; *Kohler* v. *Hayes,* 41 Cal. 457; *Palmer* v. *Howard,* 72 Cal. 295, [1 Am. St. Rep. 60, 13 Pac. 858]; *Lowe* v. *Woods,* 100 Cal. 409, [38 Am. St. Rep. 301, 34 Pac. 959]; *Vermont M. Co.* v. *Brow,* 109 Cal. 241, [50 Am. St. Rep. 37, 41 Pac. 1031]; *Rodgers* v. *Bachman,* 109 Cal. 555, [42 Pac. 448]; *Van Allen* v. *Francis,* 123 Cal. 477, [56 Pac. 339]; *Perkins* v. *Mettler,* 126 Cal. 105, [58 Pac. 384]; *Lundy F. Co.* v. *White,* 128 Cal. 170, [79 Am. St. Rep. 41, 60 Pac. 759]; *Liver* v. *Mills,* 155 Cal. 462, [101 Pac. 299].)

The above rule prevails so long as the property retains its character as personalty and the cases cited state the rule applicable in such case. The case at bar raises the question what the rule is or should be when the personal property which is the subject of the conditional sale has become affixed to the land of the buyer so as to become a part of the realty, after its delivery to him, and the buyer has thereafter made a mortgage or trust deed to one who has no knowledge or

notice that such title remains in the seller on condition, and money has been loaned on the faith of such security, also without knowledge of the secret title.

Few cases have arisen in this state which touch upon this precise question. The Civil Code declares the law as to what constitutes real property as follows: "Real or immovable property consists of: 1. Land; 2. That which is affixed to land; 3. That which is incidental or appurtenant to land; 4. That which is immovable by law." · (Sec. 658.) "Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance." (Sec. 659.) "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." (Sec. 660.) The boilers in controversy were set in the building on the land on a concrete foundation made to receive them and then bricked in by a wall, so as to retain the heat. The heavy machinery was set on concrete blocks built in the ground for that purpose with large bolts or rods brought up through the concrete by means of which the machines were fastened down. The machinery, engine, and boilers were connected together by pipes, rods, shafts, and belts, so that the engine would operate the machinery, and they were all attached for the purpose of using them permanently in the plant in the making of brick. There can be no doubt that they were affixed to the land so as to become real property, under the definition given in section 660. (*Lavenson* v. *Standard Soap Co.,* 80 Cal. 250, [13 Am. St. Rep. 147, 22 Pac. 184]; *McNally* v. *Connolly,* 70 Cal. 3, [11 Pac. 320].)

Notwithstanding the fact that personal property may be converted into real property by being affixed to land in this manner, there is a well-established rule in this state and elsewhere that where the question arises solely between the seller who retains the title and the buyer who affixes it to the land, the relations or the contract between the parties may be such that the property will be deemed personalty, and will be treated as such in law, so that the title will continue in the seller, after it is so affixed, as well as before. The Civil Code recognizes this rule in section 1013, which declares that: "When a person affixes his property to the land

of another, *without an agreement permitting him to remove it,* the thing affixed, except as provided in section ten hundred and nineteen, belongs to the owner of the land, unless he chooses to require the former to remove it.'' But this does not cover the case of a *bona fide* purchaser or mortgagee of the land without notice of the agreement.

Our decisions are not harmonious on the subject. In *Hendy* v. *Dinkerhoff,* 57 Cal. 5, [40 Am. Dec. 107], Hendy had leased a steam engine and boiler to one Lampson for two months, for use on a mining claim, the latter to pay $566.50 for the use for that period, and then to have the right to buy them from Hendy for one dollar, but until then he should have no right to them, except as lessee. They were permanently affixed to the quartz-mill on the claim, so as to become part of the realty. The mining claim and mill belonged to Dinkerhoff, who had agreed to sell it to Lampson, who took possession thereof and affixed the engine and boiler, but afterward failed to complete the purchase, whereupon Dinkerhoff took possession and claimed ownership of the engine and boiler as part of the realty. The court held that as between Hendy and Lampson ''the engine and boiler remained personal property, notwithstanding the fact that it was by him attached to the mill,'' and then proceeded to say, ''Can they be so regarded in the hands of the defendants? How this would be if the latter occupied the position of *bona fide* purchasers, without notice, of the real estate to which the chattels were attached, need not be determined, for they are not in that position.'' In *March* v. *McKoy,* 56 Cal. 85, March, being the owner of a thresher-engine and boiler mounted on wheels so that they could be readily moved from place to place, leased the same to one Woods for six months at a rental of one hundred dollars per month, with an agreement that if six hundred dollars was paid at the end of six months he would sell the property to Woods. Woods took off the wheels, bolted the axles to large timbers bedded in the soil, and connected the same with machinery in a sawmill owned by him, and thereafter the engine was used to drive the machinery. Woods failed to pay the rent but made repairs on the engine at a cost of thirty dollars. A mechanic's lien was filed upon the entire property for these repairs. The same was foreclosed and the property sold, March not being made a party to the suit. It was described in the foreclosure proceedings as a planing-

mill contiguous to McKoy and Hubbard's sawmill. The decree did not provide for any sale of the land on which the engine stood. The court said that assuming that the code gave a lien upon personal property for repairs by mechanics who did not take possession of it, it was clear that March could not be deprived of his title unless he was a party to the foreclosure proceedings, and gave its decision accordingly. The opinion shows that the case was decided upon the theory that all the parties to the foreclosure proceedings had treated the property as personalty and that it was to be considered in that aspect. The case does not appear to be applicable to the question we have before us. In *Jordan* v. *Myres,* 126 Cal. 565, [58 Pac. 1061], the question arose in an action to foreclose mechanics' liens against Myres and Joshua Hendy Machine Works, the latter being the appellant. Myres was the owner of mining property. He agreed to sell the same to one Berry under an agreement that if he failed to complete the purchase, he could remove any engine or hoisting machinery which he may have placed on the mine above ground. Shortly afterward the Machine Works leased to Berry and his associates an engine and other machinery for a stipulated rental, on payment of which they were to have the right to purchase the same. The lessees placed the same on the mine, where it was permanently affixed to the land and was thereafter used in working the mine. The work for which the mechanics' liens were filed was done after the machinery was so affixed. The court said: "It is settled law that this personal property cannot be treated as part of the realty, so far as the owner of the mine and the defendants were concerned. The question is, must it be so treated as to respondent? Section 1183 of the Code of Civil Procedure provides as follows: 'And any person who performs labor in any mining claim or claims has a lien upon the same, and the works owned and used by the owners for reducing ores from such mining claim or claims, for the work or labor done or materials furnished by each respectively,' etc. This section contemplates that the lien shall attach to the property of the owner and not to the property of some other person." To the objection that the machinery had been affixed to the realty as a part of it and that the lien would attach to it as the property of the owner of the mine unless notice was given to the lienholders by the appellant of its title, the

court referred to and quoted from *Hill* v. *Sewald,* 53 Pa. 271, [91 Am. Dec. 209], and *Stell* v. *Paschal,* 41 Tex. 640, holding that the intention of the parties to affix personal property to land is controlling as to the character of the property after it is so affixed. In the Texas case the machinery was merely put into the mortgaged property for exhibition and not for permanent use. The court then said that the general rule as to sales on execution and foreclosure was that the purchaser acquired only such title and interest as the judgment debtor had, and "we cannot see in what way the sale upon foreclosure of a mechanic's lien can be said to carry any greater interest than the owner of property had at the time the lien attached, whatever may be the rule as to a *bona fide* purchaser or mortgagee of land without notice," and that "respondent secured no lien upon this personal property by virtue of the statute, for he could only have a lien upon the property of the owner of the mine." It proceeded to say that any other view would greatly retard development, especially of mining property where it often became necessary for the miner to hire machinery which for the time being, in order to utilize it, must be affixed to the realty. It will be observed that the court took care to say that the rule might be different with respect to a *bona fide* purchaser or mortgagee of land without notice. It seems to have been assumed by the court that the plaintiff in the mechanic's lien suit did not occupy the same position as a purchaser or mortgagee without notice. In its relation of the facts, however, the court stated that it would deal with the case as though the plaintiffs had no notice of the appellant's claim of title. Apparently, the court was of the view that the statute allowing such liens restricted the rights of the lienholders to a greater extent than those of a subsequent mortgagee or purchaser without notice. The case is not an express authority on the question before us, although it is somewhat difficult to distinguish it on principle. In *Tibbitts* v. *Moore,* 23 Cal. 208, Moore executed a mortgage on real property to the appellant and thereafter purchased certain machinery from Lambard, giving to him a chattel mortgage for the price thereof and then attached the machinery to the mortgaged realty in such manner that it became a part thereof. Each mortgage was duly executed and recorded. The court held that the lien of the realty mortgage did not take effect upon the

personalty until it became attached to the realty, and consequently that as to that property the chattel mortgage was superior to the prior mortgage on the realty.

These comprise all the cases in this state which have any material relation to the question. None of them, except *Jordan* v. *Myres* and *Tibbitts* v. *Moore,* touches upon the exact question. In the former the court expressly excepted cases of *bona fide* purchasers or mortgagees of the land without notice, while the latter involved only the question of the lien of a mortgage on land to which personal property already subject to a chattel mortgage was afterward affixed. In the case at bar the machinery in question was affixed to the realty so as to become a part thereof before the deed of trust, under which plaintiff claims, was made, and there was nothing to indicate to a purchaser or mortgagee that the property so affixed was not a part of the realty or that the title thereto was not in the owner of the soil. The question, so far as this state is concerned, is an open one.

The rules of the Civil Code, above quoted, are essentially the same as those of the common law on the subject. They prevail generally throughout the United States. The exact question has often arisen in other states, and the overwhelming weight of authority is to the effect that the title of the seller of personal property of this character, which title is to be held by him until the price thereof is paid, and which is afterward affixed to land of the vendee, so as to become part of the realty, is subject to the lien of a subsequent mortgagee in good faith without notice of the reserved title. This is fully shown in the elaborate note of Mr. Freeman to *Fuller-Warren Co.* v. *Harter* (110 Wis. 80, [53 L. R. A. 603, 85 N. W. 698]), in Am. St. Rep., at pages 892 and 893, and also in the notes to *Muir* v. *Jones* (23 Or. 332, [31 Par. 646]), in 19 L. R. A. 444, and *Lawton etc. Co.* v. *Ross-Kellar etc. Co.* (33 Okl. 59, [124 Pac. 43]), in 49 L. R. A. (N. S.), at page 396, to which we refer for a list of the cases.

[2] We think the proposition is in accordance with justice and reason. The seller of the personal property voluntarily placed it in the possession and control of his vendee, with knowledge that if it was put to the use for which it was designed, it would be affixed to land. Its character was such that it could not ordinarily be used at all by the vendee, unless it was so affixed to the real estate comprising its plant. The seller, because of these facts, is presumed

to have agreed that the personal property should be, or might be, converted into real property. By this transformation it was brought under the operation of the laws for recording contracts affecting realty and for the protection of innocent purchasers thereof, regardless of the conditions of the agreement of sale. The contract between the Raymond Company and the Brick Company shows by its terms that this was the intention, and hence Curtner and McWhinney are chargeable with knowledge thereof. A person about to loan money on the security of a mortgage or trust deed on such real property, and having no information of the secret agreement as to the title, would be justified in believing that all the machinery would be hypothecated by such mortgage or deed and would have the right to rely on such belief and to make the loan accordingly. He is the innocent party in the transaction and he should be protected rather than the party who caused the deceitful appearances.

Our conclusion is that the court below erred in directing that the proceeds of the machinery in question which was affixed to the realty should be paid over to Curtner and McWhinney. They were entitled to the proceeds of those of the articles sold by the Raymond Company to the Brick Company that were not so affixed, if any such articles were included in the sale made under the stipulation for the sale of the property claimed by Curtner and McWhinney. It may be necessary for the court below to take evidence to ascertain how much of the five thousand dollars deposited is attributable to such articles, consequently we cannot direct a judgment.

The portion of the judgment appealed from and set forth in the notice of appeal is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Olney, J., Wilbur, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

Shaw, J., Lawlor, J., Wilbur, J., and Olney, J., concurred.