[L. A. Nos. 9029–9415.  In Bank.—December 22, 1927.]

## CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. FRED T. HUGHES et al., Defendants; PEDER C. PEDERSEN et al., Appellants.

[1] EMINENT DOMAIN—VALUE OF LAND—SUITABILITY FOR SUBDIVISION PURPOSES.—The true basis for computing the market value of lands sought to be condemned, where there is evidence of its suitability for subdivision purposes, is its value as it stood on the date when, under the law, its value was to be determined, plus any increased value which it may have had in the market by reason of its suitability for subdivision into city lots; but its value on the basis of what the owners would be able to obtain for the lots after subdivision had actually taken place should not be considered.

[2] ID.—EVIDENCE OF OTHER SPECIFIC SALES—ERROR—LACK OF PREJUDICE. — In a proceeding for the condemnation of lands, the permitting of plaintiff on direct examination of its own witnesses, over objection, to testify to the specific sales in the neighborhood of the land was erroneous but was without prejudice where there was much testimony properly given by witnesses for both sides as to specific sales in that vicinity and the record indicates that the trial court increased the award in reliance, in part at least, on such evidence.

[3] ID. — PLANTS AND TREES — PART OF REALTY. — Plants and trees grown on land sought to be condemned are a part of the realty, notwithstanding a lease of the land provides that they might be planted and grown by the lessee for resale; and in an action to condemn the land compensation for them should go to the lessee and not to the owner of the fee.

---

(1) 20 C. J., p. 774, n. 90, 97, p. 1109, n. 10, p. 1115, n. 85.
(2) 20 C. J., p. 1120, n. 23, p. 1210, n. 59; 22 C. J., p. 762, n. 63.
(3) 20 C. J., p. 653, n. 26, p. 852, n. 99; 32 Cyc., p. 662, n. 95.

1.  Evidence of special value of property taken for public use, note, 124 Am. St. Rep. 536. See, also, 10 R. C. L. 131. Compensation allowable in eminent domain as affected by adaptability of property for uses other than that to which it is applied by owner, note, 15 L. R. A. (N. S.) 679. See, also, 10 Cal. Jur. 339, 359; 10 R. C. L. 128, 130.

2.  Admissibility as evidence of value of price paid by other than condemnor for similar property, notes, Ann. Cas. 1913D, 581; Ann. Cas. 1916E, 598.  See, also, 10 Cal. Jur. 360; 10 R. C. L. 216.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank H. Dunne, Judge Presiding. Affirmed in part and reversed in part.

The facts are stated in the opinion of the court.

Fred Mansur and L. B. Stanton for Appellants.

Jess E. Stephens, City Attorney, E. J. Delorey, Deputy City Attorney, and Leslie K. Floyd, Deputy City Attorney, for Respondent.

SHENK, J.—This proceeding in eminent domain was instituted in August, 1924, by the City of Los Angeles under the Park and Playground Act of 1909 (Deering's Gen. Laws 1923, Act 6373). Exceptions to the report of the referees were filed by defendants Peder S. Pedersen and Catherine Pedersen, owners of the land in question, and by defendants T. Ishikata and S. Inouye, doing business under the firm name and style of Hoover Nursery Company, who were the lessees. After a hearing on the exceptions before the court judgment was rendered in favor of Peder C. Pedersen and Catherine Pedersen as owners in the sum of $19,816, subject to a judgment in favor of the Hoover Nursery Company for $2,945, as the value of the leasehold interest, and $1,000 for improvements constructed on the land by the nursery company, and subject also to the payment of a $3,000 mortgage on the property. The Pedersens and the Hoover Nursery Company have appealed separately and two records are presented. Both appeals may properly be disposed of in one opinion.

Since the appeal of the Pedersens was taken they have been paid the awards made by the court and have filed satisfactions of judgment, expressly reserving, however, their claim for greater compensation.

On behalf of the appellants Pedersen, the owners, it is urged as grounds for reversal that the trial court adopted an erroneous rule in estimating the amount of compensation for the land; that the trial court committed error in admitting on direct examination evidence of the selling prices of land in the neighborhood; that the finding that the actual value of the improvements belonging to Hoover Nursery

Company was $1,000 is contrary to the evidence and that the errors committed on the trial were prejudicial to the right of these appellants to an award of just compensation. The main ground of reversal urged by appellant Hoover Nursery Company is that the finding of the trial court that the nursery stock planted and growing in the ground is personal property for which the nursery company is not entitled to compensation is contrary to the law and the evidence and that the court should have found the value thereof and awarded compensation therefor.

Appellants Pedersen owned lot 36 of Sunnyside Tract in the City of Los Angeles, which was a part of the property sought to be condemned. This lot comprised two and one-half acres of land, which was leased to the Hoover Nursery Company and planted by it to nursery stock consisting of trees, shrubs, and other plants. It was in evidence that other tracts of land in the neighborhood had been subdivided and sold as building lots for home sites. [1] Counsel for these appellants sets forth in his brief the rules governing the estimation of compensation to be awarded in proceedings in eminent domain, including the definition of ''market value.'' These rules are too well known to require repetition here or to warrant the citation of the many cases wherein said rules have been enunciated or recognized. A comprehensive statement thereof, and the citation of the authorities supporting the same are found in 10 Cal. Jur., at pages 338 et seq. It is, of course, well understood that when acreage is reasonably adaptable to purposes of subdivision, this fact should be taken into consideration in fixing the value of the property to be taken. In other words, the value of the property at the time of the taking is to be determined not only by the uses to which it is then put, but also by the uses of which it is reasonably susceptible. These rules are not challenged but, on the contrary, are recognized and relied upon by the respondent. These appellants assert that all of their witnesses adopted as a basis for their estimates the value of the land for subdivision and building purposes. The record supports the assertion, but the further claim of these appellants that the witnesses for the respondent did not adopt the same basis of valuation and that the court did not take into consideration the value of the land for the pur-

pose of subdivision and sale as city lots, is not supported by the record. The witness McGarry, who had been one of the referees, testified on behalf of respondent that in arriving at his estimate of the market value of the land he considered its value as a subdivision possibility, but not as an actuality. The witness Smith, the other of the respondent's witnesses who had served as a referee, when asked to give his estimate of the value of the land stated: "We figured this out on a basis for a subdivider to take this piece of property as it was." A number of times during the trial the court asked questions as to whether the subdivision possibilities had been taken into consideration by the witness in arriving at his estimate of the market value and was assured that this had been done. The court also personally viewed the land and had an opportunity to see its character as well as the development of the surrounding property.

If the argument of counsel for these appellants is intended to go one step further and it is sought to establish that the value of the land must be estimated not only on a basis of a subdivision possibility, but also on the basis of what the owners would be able to obtain for the lots after subdivision had actually taken place (and the argument is open to that interpretation), we are unable to agree, nor do the cases relied upon by these appellants support this contention. For example, the test announced in *Montana Ry. Co.* v. *Warren,* 6 Mont. 275, 284 [12 Pac. 641, 646], is that "the owner has a right to obtain the market value of the land, *based upon its availability* for the most valuable purposes for which it can be used, whether or not he so used it." The same test is stated variously in other cases cited as follows: "Its market value depends not wholly upon the use to which the owner is putting it, but upon the use or uses for which it is available at the time it was taken." (*Hooker* v. *Railroad Co.*, 62 Vt. 47, 49 [19 Atl. 775].) " . . . if the present value of the lands taken was enhanced by reason of the adaptability thereof to some use to which they might be put in the future—as, for example, if land used only for farming purposes was so situated that it might be platted into city lots, and if its present value was thereby increased—such increased value was the proper basis for the assessment. We think this is a correct rule." (*Washburn* v. *Railroad Co.*, 59 Wis. 364, 378 [18 N. W. 328, 334].) "The real question was

what the property was actually worth for any and all purposes for which it might be used.'' (*South Park Commrs. v. Dunlevy*, 91 Ill. 49, 57.) ''It appeared on the cross-examination of the witnesses, that in forming their estimate of the market value of the land they had considered its adaptability for suburban residences. If such fact affected its market value at the time in question, it would properly enter into the consideration of the witnesses and the jury also in estimating such value.'' (*Sherman v. Railway Co.*, 30 Minn. 227, 229 [15 N. W. 239].) The supreme court of Kansas, in *Chicago, K. & N. Ry. Co. v. Davidson*, 49 Kan. 589 [31 Pac. 131], reviewed the cases mentioned hereinabove, and on the authority of those cases, among others, affirmed a judgment of compensation entered on a verdict, approving the following instruction: ''In estimating the market value of the land, both before and after the condemnation, it will not be proper for you to make the estimate on what the land would have been worth had the land at that time, or prior thereto, been laid off or platted into lots and blocks as an addition to the city of Wellington, but you must consider the land as it was at that time, and with reference to the use that was then being made of the same, and all other uses that could reasonably be supposed from the evidence could be made of it thereafter, whether for farming purposes or for platting and laying the same off into lots and blocks as an addition to the city of Wellington.'' Under all of the authorities, both in this state and elsewhere, the true basis for computing the market value of land sought to be condemned, in view of the evidence of its suitability for subdivision purposes, is its value as it stood on the date when, under the law, its value was to be determined, plus any increased value which it may have had in the market by reason of its suitability for subdivision into city lots. It may fairly be said, therefore, that the witnesses for both parties in this case were guided by the proper rules in the valuation of the land. And it must be assumed in support of the judgment that the court adopted the same theory in arriving at its conclusions. The opinion evidence as to values ranged from $13,958, which was the amount fixed by the board of referees, to $31,000. The fact that after the hearing on the exceptions and a view of the premises the court added $5,858 to the award of the referees indicates that the court was impressed

by the showing of the availability of the property for subdivision purposes.

[2]  The ruling challenged by the appellants Pedersen as prejudicially erroneous was made by the court in the course of the direct examination of the respondent's witness Smith, who was asked by respondent's counsel: "Q. Now you have a list of any sales made there, that your figures are based on?" Objection was made to this evidence on direct examination of any specific sales, but the court stated that Mr. Smith "could tell what he knows about sales out there." This the witness proceeded to do. The ruling was erroneous and the objection should have been sustained. (*Central Pacific R. R. Co.* v. *Pearson,* 35 Cal. 247, 262; *Reclamation Dist. No. 730* v. *Inglin,* 31 Cal. App. 495 [160 Pac. 1098]; 10 Cal. Jur., p. 360.) But we are not convinced that the ruling was prejudicial. Much testimony was properly given by witnesses for both sides as to specific sales in that vicinity and the record indicates that the trial court increased the award in reliance, in part at least, on such evidence.

The evidence in court as to the value of the improvements belonging to Hoover Nursery Company was only $120 less than the amount fixed by the judgment on this item. As the court personally viewed the premises, including the improvements, we cannot say that the award thereon was excessive.

[3]  The contention of Hoover Nursery Company that the nursery plants and trees growing in the ground were, on the record presented, a part of the realty would seem to be well taken. Respondent contends, however, that because the lease between the parties provided that nursery stock might be planted and grown by the nursery company for resale by it, such trees and plants acquired the character of personal property exclusively. The Civil Code provides: "Sec. 657. Property is either: 1. Real or immovable; or, 2. Personal or movable. Sec. 658. Real or immovable property consists of: 1. Land; 2. That which is affixed to land. . . . Sec. 660. A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; . . . " These sections are merely declaratory of the common law. Growing trees, shrubs, and other plants were generally considered a part of the realty to which they were attached by their roots and continued to be such until they were severed,

when they became personal property. The occasion to declare trees, plants, crops, etc., to be personal property while they were attached to the land by their roots, was merely to apply a fiction of law in order to arrive at a just determination in particular cases. Trees and plants have thus been termed personal property in cases, such as cited by the respondent herein, where there has been an agreement between the parties to the effect that though such trees, etc., be planted by one other than the owner, they shall nevertheless not become the property of the owner of the land. The Civil Code, section 1013, provides that when a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land. It has often been held that property affixed to land which, as between the parties shall be deemed to be personal property, still retains its natural character of realty as to third persons. (*McNally* v. *Connolly,* 70 Cal. 3 [11 Pac. 320]; *San Francisco Breweries* v. *Schurtz,* 104 Cal. 420 [38 Pac. 92]; *Oakland Bank of Savings* v. *California Pressed Brick Co.,* 183 Cal. 295 [191 Pac. 524].) The Hoover Nursery Company, therefore, had an additional interest in the real property sought to be condemned to the extent that it was the owner of the trees and shrubs planted and growing in the ground constituting an interest in the land in the nature of an improvement and it was entitled to be compensated for this interest on the taking of the real property by the city. Under the evidence the compensation for this interest in the land should go to the lessee, the Hoover Nursery Company, and not to the owners of the fee.

In view of the foregoing determinations, it is deemed unnecessary to discuss other points raised by the parties to these appeals.

The judgment as to the appellants Peder C. Pedersen and Catherine Pedersen is affirmed. The judgment as to the appellants T. Ishikata and S. Inouye, doing business under the firm name and style of Hoover Nursery Company, is reversed.

Richards, J., Seawell, J., Preston, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices concurred.