[Civ. No. 24869.   First Dist., Div. One.   Sept. 10, 1968.]

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, Plaintiff and Respondent, v. CENTRAL VALLEY NATIONAL BANK, Defendant and Respondent; SANFAR LABORATORIES, INC., Defendant and Appellant.

Freda B. Walbrecht for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Watson, Hoffe & Fannin and R. Bruce Hoffe for Defendant and Respondent.

MOLINARI, P. J.—Following a judgment condemning a parcel of real property to San Francisco Bay Area Rapid Transit District, proceedings were had pursuant to Code of Civil Procedure section 1246.1 to apportion the $33,000 condemnation award as between Donald Moore and Sanfar Laboratories, Inc., the owner and lessee, respectively, of the subject property. Sanfar appeals from the judgment in those proceedings, which judgment awarded $2,025 of the $33,000 to Sanfar and the remainder (less taxes due to the County of Contra Costa and the City of El Cerrito) to Central Valley

National Bank, Moore's assignee. Sanfar's sole contention on this appeal is that in apportioning the condemnation award the trial court should have awarded Sanfar an amount equal to the value of the improvements which it constructed on the condemned property.[1]

By a written lease dated March 15, 1962, Moore, the owner of a parcel of improved property at 11570 San Pablo Avenue in El Cerrito, agreed to lease the subject property to Sanfar for use in its business of biological manufacturing. This lease, which was for a term of one year commencing March 16, 1962 but gave Sanfar an "option to renew on year to year basis," provided that Sanfar "shall have the right to partition, add electrical wiring, air ducts, and install sinks, etc., with sewer and water connections as needed for normal conduct of business" and that "All improvements . . . must be done in such a way as to have the approval of the lessor and the city building inspector."

In October 1962 Moore and Sanfar executed a second lease for the subject property, the term of this lease to be for five years commencing on March 16, 1963 at the time the original lease expired. This lease, which provided for an increased rental, contained provisions regarding improvements to the subject property identical to those contained in the previous lease and further provided that "Cost of improvements will be borne by the lessee."

In order to make the leased premises suitable for use in its business, Sanfar, in March or April 1962, commenced construction of various improvements on the interior of the building. These improvements consisted of the following: partitioning the building into a number of rooms each with a special function, such as cold room, temperature control area and chemical laboratory; constructing ceilings in several of the rooms lower than the existing ceilings; constructing floors in several of the rooms above the existing floors; installing insulation in a number of the ceilings, floors, and walls; installing surface mounted electrical outlets, a ventilating system, and gas and water outlets; and installing work benches, sinks, and shelves in a number of the rooms.

The manner in which these improvements were constructed was described in detail by Verland Turner, the contractor

---

[1]Sanfar stipulated that it claimed an interest in the condemnation award solely by virtue of the improvements it constructed on the leased property and not by virtue of any "bonus value" of the lease.

who performed the work for Sanfar. According to Turner, all of the improvements, which were constructed over a two- to three-year period commencing in March 1962, were installed in such a way that they could be dismantled and removed from the building without causing any damage to the building itself. Turner's testimony in this regard was corroborated by John Farquhar, the president of Sanfar, who testified that the improvements were constructed in this manner at Sanfar's request. On the other hand, Robert Johnson, a general contractor, testified that he inspected the subject building and studied the plans for the improvements and that in his opinion the improvements were not built to be removable and that it would be economically unfeasible to remove them.

Testimony was introduced to the effect that Sanfar expended approximately $16,338.04 in constructing the various improvements on the subject property and that of this amount $13,827.96 was expended prior to the commencement of the second lease. Moore testified that at the time he was negotiating with Sanfar for the second lease he had a conversation with Farquhar in which he advised Farquhar that the improvements which Sanfar had installed were "my improvements" and told Farquhar about a similar situation in which Moore made claim to the tenant's improvements.

Pursuant to the request of counsel, the trial court, at the commencement of the trial, met with counsel and representatives of Sanfar and Moore at the leased property, at which time it examined the various interior aspects as well as the exterior portions of the building and observed the various items and matters that were pointed out by counsel and the representatives of Moore and Sanfar.

The general principle of law applicable to the instant case is that a lessee is entitled to compensation for fixtures, structures, or other improvements installed or erected by him upon property taken under eminent domain if, as against the lessor, he has the right to remove such improvements prior to or upon expiration of his term. (*People* v. *Klopstock,* 24 Cal.2d 897, 902-903 [151 P.2d 641]; *City of Los Angeles* v. *Klinker,* 219 Cal. 198, 205-210 [25 P.2d 826, 90 A.L.R. 148]; *City of Los Angeles* v. *Hughes,* 202 Cal. 731, 737 [262 P. 737].)[2] The critical question thus becomes whether, in the instant case, Sanfar had the right as against Moore to remove

[2]See 3 A.L.R.2d 302 and cases there cited.

the various improvements which it constructed on the leased premises. The controlling law on this question is contained in Civil Code section 1019, which provides as follows: ''A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises.'' (See also Civ. Code, §§ 660 and 1013 defining ''fixtures.'')

In the instant case the evidence was conflicting on the question of whether the improvements constructed by Sanfar could be removed without causing injury to the leased premises and whether the improvements had, by the manner in which they were affixed to the subject property, become an integral part of the premises. Thus, while Turner testified that the improvements were constructed in such a way as to be removable without substantial damage to the property, Johnson stated that based upon his inspection of the leased property he concluded that the improvements were not built so as to be removable and that if their removal was attempted, both the improvements and the building would suffer substantial damage. Moreover, the trial court inspected the leased premises, so that its observations must be considered independent evidence in support of the judgment. (*South Santa Clara etc. Dist.* v. *Johnson,* 231 Cal.App.2d 388, 399 [41 Cal. Rptr. 846]; *Noble* v. *Kertz & Sons Feed etc. Co.,* 72 Cal.App. 2d 153, 159 [164 P.2d 257]; *Gates* v. *McKinnon,* 18 Cal.2d 179, 182-183 [114 P.2d 576]; *1st Olympic Corp.* v. *Hawryluk,* 185 Cal.App.2d 832, 837 [8 Cal.Rptr. 728].)

Accordingly, the evidence adduced at the trial and the trial court's view of the premises constitute substantial evidence to support the trial court's conclusion that the improvements constructed by Sanfar had, by the manner of their affixion, become an integral part of the leased premises and that they could not be removed without causing injury to the premises. Although the trial court made no specific findings of fact to this effect, such findings must be implied from the more general findings and from the judgment since Sanfar made no request for specific findings.[3] (*Auer* v. *Frank,* 227 Cal.App.2d

---

[3]The sole finding made by the trial court on the issue at hand is the following: ''VI. The fair market value of defendant SANFAR LABORATORIES, INC.'s interest in and to the improvements made to the structure is $2,025.00.''

396, 406 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108]; *Foster* v. *Gray*, 203 Cal.App.2d 434, 438 [21 Cal.Rptr. 429]; *Nemeth* v. *Pankost*, 224 Cal.App.2d 351, 355 [36 Cal.Rptr. 600]; *Spindler Realty Corp.* v. *Monning*, 243 Cal.App.2d 255, 275 [53 Cal. Rptr. 7].)

Sanfar makes a number of specific arguments in support of its position that of the $33,000 condemnation award Sanfar should have received an amount equal to the value of the improvements which it constructed on the condemned property. First, Sanfar maintains that the apportionment of the award by the trial court was in effect a determination by the court that the lease drawn up between Moore and Sanfar in October 1962 terminated the original lease and that the leasehold improvements thereupon became the property of Moore. In this regard Sanfar contends that the execution of the second lease did not constitute a forfeiture of Sanfar's ownership of the subject improvements. In response to this argument we note that the record in no way reflects that the apportionment of the condemnation award was based on such a determination by the trial court. As we view the record, it is apparent that the trial court concluded that the subject improvements were affixed to the condemned property in such a way as to make them fixtures with ownership rights in Moore rather than Sanfar.

██ Sanfar's second and third arguments are related. The substance of this argumentation is that because Moore did not claim ownership of the improvements until after the condemnation action he both waived his claim and is estopped to claim their ownership. This position does not find support in the record. There is nothing in the record to substantiate the claim that Moore and Sanfar orally agreed at the time of entering into both leases that upon the expiration of the lease term Sanfar was to remove its improvements from the leased property and restore the building to its original condition. No mention of such an agreement was made during the course of the trial. Rather it is referred to for the first time in an affidavit of Charles Wylie in support of Sanfar's motion for a new trial. Clearly the contents of that affidavit cannot be considered by this court in reviewing the question of whether the evidence adduced in the trial court supports the judgment entered below.

The record affirmatively shows, moreover, that Moore affirmatively indicated a claim of ownership of the subject

improvements during Sanfar's tenancy. Moore testified that in a conversation with Farquhar during negotiations for the second lease he specifically stated to Farquhar that the improvements which had been installed were "his improvements" and made an analogy to a similar situation in which he had been a party. The effect and weight to be given this testimony was for the trial court's determination. We conclude, therefore, that upon the state of the record presented on this appeal there is no basis for the claim of estoppel or waiver.

Finally, Sanfar contends that it was the intent of the parties that the subject improvements were to remain as Sanfar's property throughout the tenancy. In this regard we note that the evidence adduced at the trial as to the intent of the parties was conflicting. The resolution of this conflict was for the trial court. Moreover, as already pointed out, the trial court was entitled to find, upon the basis of the manner in which the improvements were affixed to the leased property, that the subject improvements became Moore's property.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied September 30, 1968.